# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* ANDREW SHEA,<br><br>　　　　　Plaintiff,<br><br>　　　v.<br><br>eHEALTH, INC., et al.,<br><br>　　　　　Defendants. | Civil Action No. 21-cv-11777-DJC<br>Hon. Denise J. Casper |

**TPMO DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW
IN SUPPORT OF MOTION TO DISMISS THE GOVERNMENT'S
<u>COMPLAINT IN PARTIAL INTERVENTION</u>**

## TABLE OF CONTENTS

                                                                                                     **Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ........................................................................................................................ 2

      I.      The Government Fails to Plead that the TPMOs Caused the Submission of the Allegedly False Claims (Counts I-III) ................................................................... 4

      II.     The Government Fails to Plead that the TPMOs Caused False Records or Statements to Be Made or Used (Counts IV and V) ................................................. 8

      III.    The Government Fails to Plead a Conspiracy Claim (Counts IV and VII) ............. 9

CONCLUSION .................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*,
   597 F. Supp. 2d 1280 (M.D. Fla. 2009) ............................................................. 4, 7, 8

*United States ex rel. Bassan v. Omnicare, Inc.*,
   2025 WL 1212393 (S.D.N.Y. Apr. 25, 2025) ............................................................. 5

*Carter v. United States*,
   530 U.S. 255 (2000) ................................................................................................. 7

*DiVittorio v. Equidyne Extractive Indus.*,
   822 F.2d 1242 (2d Cir. 1987) ................................................................................... 6

*United States ex rel. Hartley v. Hosp. Auth. of Valdosta and Lowndes County, Ga.*,
   2023 WL 6702483 (M.D. Ga. Oct. 12, 2023) ............................................................ 3

*United States ex rel. Hutcheson v. Blackstone Medical, Inc.*,
   647 F.3d 377 (1st Cir. 2011) .................................................................................... 3

*United States ex rel. Martino-Fleming v. South Bay Mental Health Center, Inc.*,
   2018 WL 4539684 (D. Mass. Sept. 21, 2018) ......................................................... 4

*United States ex rel. Nedza v. Am. Imaging Mgmt., Inc.*,
   2020 WL 1469448 (N.D. Ill. Mar. 26, 2020) ............................................................ 5

*United States ex rel. Nicholson v. Clarksville Pain Institute, LLC*,
   2025 WL 727901 (M.D. Tenn. Mar. 6, 2025) .......................................................... 5

*United States ex rel. Petratos v. Genentech Inc.*,
   855 F.3d 481 (3d Cir. 2017) ..................................................................................... 3

*United States ex rel. Piacentile v. Wolk*,
   1995 WL 20833 (E.D. Pa. Jan. 17, 1995) ............................................................. 5, 6

*United States ex rel. Polansky v. Exec. Health Res., Inc.*,
   196 F. Supp. 3d 477 (E.D. Pa. 2016) ..................................................................... 4, 5

*Rick v. Profit Mgmt. Assocs.*,
   241 F. Supp. 3d 215 (D. Mass. 2017) ...................................................................... 6

*United States ex rel. Schaengold v. Mem'l Health, Inc.*,
   2014 WL 6908856 (S.D. Ga. Dec. 8, 2014) .......................................................... 4, 5

*United States ex rel. Schmidt v. Zimmer, Inc.*,
    386 F.3d 235 (3d Cir. 2004) .................................................................................................. 5

*United States ex rel. Shaver v. Lucas Western Corp.*,
    237 F.3d 932 (8th Cir. 2001) .................................................................................................. 5

*United States ex rel. Stonebrook v. Merck KGaA*,
    2024 WL 1142702 (D. Mass. Mar. 15, 2024) ......................................................................... 3

*United States v. Menasche*,
    348 U.S. 528 (1955) ............................................................................................................ 7, 8

*United States v. President and Fellows of Harvard Coll.*,
    323 F. Supp. 2d 151 (D. Mass. 2004) ............................................................................. *passim*

*United States v. Regeneron*,
    128 F.4th 324 (1st Cir. 2025) ................................................................................................. 3

*United States v. Rivera*,
    55 F.3d 703 (1st Cir. 1995) .................................................................................................... 4

*United States ex rel. Westmoreland v. Amgen, Inc.*,
    738 F. Supp. 2d 267 (D. Mass. 2010) ..................................................................................... 9

**Statutes**

31 U.S.C. § 3729 ............................................................................................................. *passim*

42 U.S.C. § 1320a-7b(g) ........................................................................................................ 3

**Regulations**

42 C.F.R. § 422.2274 ............................................................................................................. 2

42 C.F.R. § 422.2260 ............................................................................................................. 1

Defendants GoHealth, Inc., SelectQuote, Inc., eHealth, Inc., and eHealthInsurance Services, Inc. (collectively, the "TPMOs" or "TPMO Defendants") respectfully submit this Supplemental Memorandum of Law in Support of Defendants' Joint Motion to Dismiss the Government's Complaint in Partial Intervention.[1] The claims in the Complaint in Partial Intervention ("Complaint" or "Compl.") should be dismissed in full, with prejudice, for all of the reasons set forth in the motion to dismiss and supporting memorandum filed by all Defendants, including the TPMOs ("Consol. Mot." or "Consolidated Motion to Dismiss"). The TPMOs submit this brief to address additional pleading deficiencies in the Complaint that provide independent bases for dismissing all claims against the TPMOs.

## INTRODUCTION

Where, as here, the Government seeks to hold a defendant liable under the False Claims Act ("FCA") based on a claim for payment that was submitted by someone else, or a record that was made by someone else, the Government must plausibly plead that the non-submitting defendant "cause[d]" the other party to submit the claim or make the record. 31 U.S.C. §§ 3729(a)(1)(A)–(B). This causation requirement fundamentally limits the scope of the FCA as applied to parties, like the TPMOs, who are not alleged to have themselves submitted false claims or made false records. Yet the 866-paragraph Complaint completely ignores this independent element of pleading and proof: the Government makes no effort to allege that any of the TPMOs *caused* any claims to be submitted or records to be made.

As the Complaint alleges, the TPMOs are paid by private insurers (Medicare Advantage Organizations or "MAOs"—including, as relevant here, Humana Inc., Aetna Life Insurance Company, and/or Elevance Health, Inc.)—for services that include marketing those MAOs'

---

[1] "TPMO" stands for Third-Party Marketing Organization. 42 C.F.R. § 422.2260. The TPMO Defendants are also referred to as Brokers, including in the Complaint.

1

Medicare Advantage ("MA") plans and helping eligible beneficiaries enroll in plans of their choosing. Compl. ¶¶ 11–13, 40, 54, 56–59; *see generally* 42 C.F.R. § 422.2274 (authorizing payments for these services). By regulation, the MAOs "must oversee . . . downstream" market participants such as agents, brokers and TPMOs to "ensure [that they] abide by all applicable State and Federal laws, regulations, and requirements." 42 C.F.R. § 422.2274(c) (version effective Mar. 22, 2021). *Accord id.* at § 422.2274(g) (version effective June 28, 2022). The TPMOs do not contract with the Centers for Medicare & Medicaid Services ("CMS"), which administers the MA program. *See* Compl. ¶ 92 (alleging MAOs contract with CMS). The TPMOs do not submit claims, data, or information of any kind to CMS. *See* Compl. ¶¶ 94–96 (alleging MAOs submit certain certifications and data to CMS). The TPMOs are simply vendors who are paid by the *MAOs* to market plans, to help beneficiaries enroll, and for other administrative support. Compl. ¶¶ 11, 12, 13, 76. None of this is disputed. Nevertheless, the Government seeks to subject the TPMOs to crushing liability based on alleged claims and certifications that the *MAOs* periodically submitted to CMS in connection with the *MAOs'* contracts and in which the *MAOs* allegedly requested that CMS pay the *MAOs*. But the Complaint here does not even ***try*** to link the TPMOs to these claims or certifications—indeed, it does not mention the TPMOs in connection with these submissions at all.

## ARGUMENT

Sections 3729(a)(1)(A) and (a)(1)(B) of the FCA create liability only when a defendant:

(A)　knowingly ***presents, or causes* to be presented**, a false or fraudulent claim for payment or approval; or

(B)　knowingly ***makes, uses, or causes* to be made or used**, a false record or statement material to a false or fraudulent claim.

31 U.S.C. §§ 3729(a)(1)(A)–(B) (emphases added). The Government does not argue that the TPMOs presented any false claims or made or used any false records. The Government therefore

must plausibly plead that the TPMOs "knowingly *caused* the submission of either a false or fraudulent claim or false records or statements." *United States ex rel. Hutcheson v. Blackstone Medical, Inc.*, 647 F.3d 377, 389 (1st Cir. 2011) (emphasis added). And such causation allegations must satisfy Rule 9(b)'s heightened "particularity" standard. *See United States ex rel. Stonebrook v. Merck KGaA*, 2024 WL 1142702, at *1–2 (D. Mass. Mar. 15, 2024) (applying Rule 9(b) to question of whether non-submitter caused the submission of false claims); *see also, e.g.*, *United States ex rel. Hartley v. Hosp. Auth. of Valdosta and Lowndes County, Ga.*, 2023 WL 6702483, at *12–13 (M.D. Ga. Oct. 12, 2023) (dismissing FCA claims for failure to plead causation under Rule 9(b)).

Causation under §§ 3729(a)(1)(A) and (a)(1)(B) of the FCA—*i.e.*, the question of whether the TPMOs "caused" the MAOs to submit the contested claims or to make the contested records—is an independent element that must be plausibly alleged with sufficient particularity; it is a separate element from other elements of FCA liability, including (without limitation) falsity, materiality, and knowledge.[2] *See United States ex rel. Petratos v. Genentech Inc.,* 855 F.3d 481, 487 (3d Cir. 2017) (identifying causation as a separate FCA element); *Stonebrook*, 2024 WL 1142702, at *1–2; *see, e.g.*, *Hartley*, 2023 WL 6702483, at *13.

The Government does not even attempt to meet its burden here.

---

[2] The causation question under these provisions of the FCA is distinct from other causation arguments applicable to all Defendants in the Consolidated Motion to Dismiss, which concern the relationship between an alleged, underlying violation of the AKS and the allegedly false claim. For example, it is separate from the question of whether a claim "resulted from" a kickback under 42 U.S.C. § 1320a-7b(g). *See United States v. Regeneron*, 128 F.4th 324, 328 (1st Cir. 2025) (discussing the "resulting from" element of an AKS violation as bearing only on the falsity element (*i.e.*, whether there was a "false or fraudulent claim under the FCA")).

At issue here is the element of causation under Sections 3729(a)(1)(A) and (a)(1)(B), which must be alleged with particularity in an FCA case against a non-submitting defendant irrespective of the underlying theory of falsity, and which concerns the non-submitting defendant's role in "caus[ing] to be presented" a false claim or "caus[ing] to be made or used" a false record.

**I.	The Government Fails to Plead that the TPMOs Caused the Submission of the Allegedly False Claims (Counts I-III)**

To establish causation, courts require at least "some degree of participation in the claims process." *United States v. President and Fellows of Harvard Coll.*, 323 F. Supp. 2d 151, 186–87 (D. Mass. 2004); *United States ex rel. Martino-Fleming v. South Bay Mental Health Center, Inc.*, 2018 WL 4539684, at *4 (D. Mass. Sept. 21, 2018) (same); *see United States ex rel. Polansky v. Exec. Health Res., Inc.*, 196 F. Supp. 3d 477, 513 (E.D. Pa. 2016) (requiring "some level of direct involvement in causing the submission of false claims to the government"). And because the FCA "attaches liability, ***not to the underlying fraudulent activity***," but to the "claim," *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995) (emphasis added), alleging "participation in a scheme that results in an eventual submission of a false claim is not sufficient for FCA liability to lie." *United States ex rel. Schaengold v. Mem'l Health, Inc.*, 2014 WL 6908856, at *14 (S.D. Ga. Dec. 8, 2014); *see*, *e.g.*, *id.* (dismissing FCA claim against certain defendants where there were no allegations that these entities were "directly involved with the submission of, or causing the submission of, falsely certified cost reports to the Government" and, at most, were "involved in setting up the compensation arrangements" that caused those certifications to be false); *President and Fellows of Harvard Coll.*, 323 F. Supp. 2d at 188–89 (granting summary judgment to a defendant who "did not take any actions to have claims submitted to the government"); *United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*, 597 F. Supp. 2d 1280, 1291–92 (M.D. Fla. 2009) (holding defendant oxygen provider did not cause submissions of claims by oxygen testing company, including because it had no control over the claims procedures, and did not participate in the submission of bills to Medicare).

To be sure, a non-submitting party is not immune from liability simply because a claim passes through the hands of a third party. *See*, *e.g.*, *President and Fellows of Harvard Coll.*, 323

F. Supp. 2d at 186–87 ("delegating the submission of claims"—as from a "doctor" to a "billing service"—causes a claim to be presented). But there must be allegations about *how* the non-submitting defendant was the ***cause*** of the false claim's submission. There are none here. Importantly, mere "knowledge of the submission of claims and knowledge of the falsity of those claims" is not enough; nor is mere involvement in an underlying scheme. *See id.*; *Schaengold*, 2014 WL 6908856, at *14; *see also United States ex rel. Bassan v. Omnicare, Inc.*, 2025 WL 1212393, at *5 (S.D.N.Y. Apr. 25, 2025) ("What is abundantly clear from the overwhelming majority of cases cited in the parties' briefs, and from the Court's own research, is that a defendant's 'mere awareness that another may, or even has, chosen to make [a false] claim does not alone constitute causing a false claim to be presented.'" (quoting *United States ex rel. Schmidt v. Zimmer, Inc.*, 386 F.3d 235, 245 (3d Cir. 2004)); *see, e.g.*, *United States ex rel. Shaver v. Lucas Western Corp.*, 237 F.3d 932, 933 (8th Cir. 2001) ("Even assuming the truth of Shaver's allegation that Lucas 'knew' Shaver would submit such bills to Medicare, Lucas cannot be said to have 'caused' Shaver's medical bill claims to be submitted to the government."); *United States ex rel. Nedza v. Am. Imaging Mgmt., Inc.*, 2020 WL 1469448, at *11 (N.D. Ill. Mar. 26, 2020) (dismissing claims against defendant that argued the relator "fail[ed] to allege facts showing that [the defendant] was directly involved in [the submitting party's] pre-authorization review process" for claims, noting that "knowledge and inaction" of this process could not, "standing alone . . . form the basis of FCA liability").[3]

---

[3] *See also*, *e.g.*, *United States ex rel. Nicholson v. Clarksville Pain Institute, LLC*, 2025 WL 727901, at *19 (M.D. Tenn. Mar. 6, 2025) (dismissing for failure to allege defendant caused claims to be presented where there was no evidence that, *inter alia*, she "played any role in the submission of the claims, or that she even knew about them"); *Polansky*, 196 F. Supp. 3d at 513–14 (finding defendants' "marketing efforts . . . too far removed" from participating in the claims process of defendants' subsidiary, even where relator alleged that these defendants "benefitted from [the subsidiary] financially, that some of these defendants ha[d] knowledge of [the subsidiary's practices] and that some defendants have overlapping employees, managers or officers" with the subsidiary); *United States ex rel. Piacentile v. Wolk*, 1995 WL 20833, at *4 (E.D. Pa.

5

Here, the Complaint contains ***no factual allegations whatsoever*** pleading that the TPMOs "caused" the submission of any claims. This is not a close call. Neither one of the Government's two theories regarding the submission of claims so much as mentions the TPMOs, much less pleads that they played a role in those submissions. The Complaint makes no effort to do this collectively, let alone as to each TPMO individually as is required. *See Rick v. Profit Mgmt. Assocs.*, 241 F. Supp. 3d 215, 224 (D. Mass. 2017) ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud." (quoting *DiVittorio v. Equidyne Extractive Indus.*, 822 F.2d 1242, 1247 (2d Cir. 1987))).

The Government first argues that false claims were submitted when the MAOs allegedly provided enrollment data to CMS, attested to the accuracy of those submissions, and represented their compliance with the AKS. Compl. ¶¶ 765–82. The Government highlights language in CMS's contracts with the *MAOs* regarding compliance, alleges who from the *MAOs* signed various contracts, and explains when the *MAOs'* contracts were renewed. Compl. ¶¶ 767–74. It then points to certain data allegedly sent by the *MAOs* to CMS and certifications regarding AKS compliance allegedly made by the *MAOs*, and identifies who from the *MAOs* signed these certifications. Compl. ¶¶ 775–82. ***Conspicuously absent from these allegations is a single mention of the TPMOs***. As noted, pleading causation requires more than alleging mere knowledge of claims being made, *see President and Fellows of Harvard Coll.*, 323 F. Supp. 2d at 186–87, and the Government here cannot even clear that hurdle. That is, the Government does not allege that the TPMOs ***knew*** about these certifications, much less ***caused*** them.

---

Jan. 17, 1995) ("The government's argument that [the] defendant . . . was aware of the fraud does not eliminate the need for some action by the defendant whereby the claim is presented or caused to be presented.").

The same defect applies with equal force to the Government's second theory, which asserts that false claims were submitted to CMS by the *MAOs* when the *MAOs* allegedly represented compliance with anti-discrimination laws when submitting monthly enrollment data and attestations. *See* Compl. ¶¶ 783–90. Again, there are no allegations that the TPMOs knew these claims were submitted, much less that they knew what the claims were or played a role in causing the MAOs to submit them.

The Government seems to have proceeded on the mistaken view that merely alleging that the TPMOs were involved in an underlying kickback or discrimination scheme is enough. *See* Compl. Section V.A ("The Defendants Made, or Caused to Be Made, Material False Claims *Because They Violated the Anti-Kickback Statute*") (emphasis added); Section V.B ("Aetna, Humana, and the Defendant Brokers Made, or Caused to Be Made, Material False Claims *Because They Violated Anti-Discrimination Laws, Regulations, and Contractual Provisions*") (emphasis added). But, as noted, it is well-settled that mere participation in an alleged scheme that results in an eventual submission of a false claim is not enough to establish FCA liability. *See supra* pp. 4–5. Causation under the FCA assumes for the sake of argument that a false claim was submitted and asks instead about the defendant's **role in causing the submission** of that claim. *See, e.g.*, *President and Fellows of Harvard Coll.*, 323 F. Supp. 2d at 186–88 (considering whether there was "sufficient evidence to tie [the defendant] to the claims process"); *Bane*, 597 F. Supp. 2d at 1292 (holding that "[t]he link between [defendant's] conduct and [the] submission of Medicare claims is simply too attenuated to support liability under the causation element").

The Government effectively reads out the causation requirement from the plain text of the FCA, which is prohibited under basic rules of statutory construction. *See Carter v. United States*, 530 U.S. 255, 262 (2000); *see also United States v. Menasche*, 348 U.S. 528, 538–39 (1955) ("It

7

is our duty to give effect, if possible, to every clause and word of a statute . . . ." (internal citations omitted)). And, in doing so, the Government adopts a theory without a clear limiting principle: if it were enough under the FCA to merely allege that a downstream market participant was "involved" with an alleged course of conduct, why stop at brokers engaged in marketing? Why not sweep in vendors or other parties hired by the TPMOs to assist with the marketing campaigns? Why not vendors of those vendors? Those difficulties help to explain why, when a defendant is not the one who submits the allegedly false claims (the very core of an FCA case), liability is limited to those who are plausibly alleged, with particularity, to have played a role in causing those claims to be submitted.

In short, the Government does not allege any facts suggesting that the TPMOs even knew about the claims—made by the MAOs—that the Complaint takes issue with, much less that the TPMOs were involved in submitting those claims. This is fatal to the Government's claims against the TPMOs under 31 U.S.C. § 3729(a)(1)(A). *See, e.g.*, *President and Fellows of Harvard Coll.*, 323 F. Supp. 2d at 186–88; *Bane*, 597 F. Supp. 2d at 1292.

II. **The Government Fails to Plead that the TPMOs Caused False Records or Statements to Be Made or Used (Counts IV and V)**

The Government's claims under 31 U.S.C. § 3729(a)(1)(B) fail for similar reasons. The Government enumerates the following as the supposedly false records underlying these counts: "false claims, false statements in claims to federal healthcare programs, and false statements about compliance with the AKS and with laws barring discrimination." Compl. ¶¶ 829, 841. None of these purportedly false records or statements were created or used by the TPMOs, and the Government does not allege otherwise. For the same reasons previously discussed, here the Government ignores its obligation to allege that the TPMOs *caused* the MAOs to make or use these records or statements. Again, the Government does not allege that the TPMOs had a causal

8

role in making, using, or ultimately submitting any records or statements made by the MAOs to the Government. The Government has not even alleged that the TPMOs knew that these records or statements were being made or what they said, which would not be enough in any event. *See supra* Part I. Without any plausibly alleged and particularized connection between the records or statements at issue and any action taken by the TPMOs, the Government's "false records" counts must be dismissed.

### III. The Government Fails to Plead a Conspiracy Claim (Counts IV and VII)

The Government's tag-along claim under 31 U.S.C. § 3729(a)(1)(C) for conspiracy to violate the FCA also fails. These claims are based entirely on the argument that the TPMOs conspired to violate the FCA when they allegedly participated in the AKS and anti-discrimination schemes. Compl. ¶¶ 854, 859. But the Government cannot use conspiracy as an end-run around causation when the Government has not alleged a single fact suggesting that the TPMOs even knew about the data and certificate submissions, *see supra* Part I and II, and therefore could not have conspired with the MAOs to get the claims "allowed or paid by the United States." *See United States ex rel. Westmoreland v. Amgen, Inc.*, 738 F. Supp. 2d 267, 280 (D. Mass. 2010).

### CONCLUSION

The Government has not pleaded a viable cause of action against any of the Defendants for the reasons set out in the Consolidated Motion to Dismiss. But the claims against the TPMOs—vendors who are not alleged to have known about, let alone to have submitted, made, or used any of the claims or records at issue—compound the Government's overreach. The claims against the TPMOs must be dismissed for the independent reason that the Government has failed to allege ***at all***, and certainly not with the required plausibility and particularity, that the TPMOs did anything to cause the submission of any claims or the creation or use of any records. The Government's

claims against GoHealth, Inc., SelectQuote, Inc., eHealth, Inc., and eHealthInsurance Services should be dismissed with prejudice.

Dated: August 19, 2025

Respectfully Submitted,

*/s/ Zachary R. Hafer*
Zachary R. Hafer (BBO #569389)
Adam M. Katz (BBO #706834)
Isabel C. McGrath (BBO #712925)
SIMPSON THACHER & BARTLETT LLP
855 Boylston Street
Boston, MA 02116
Telephone: (617) 778-9200
zachary.hafer@stblaw.com
adam.katz@stblaw.com
isabel.mcgrath@stblaw.com
*Counsel to eHealth, Inc. and eHealthInsurance Services, Inc.*

*/s/ Laura McLane*
Laura McLane (BBO #644573)
David Gacioch (BBO #660784)
Mara Theophila (BBO #704763)
Natasha Dobrott (BBO #705287)
MCDERMOTT WILL & SCHULTE LLP
200 Clarendon Street, 58th Floor
Boston, MA 02116
Telephone: (617) 535-4410
lmclane@mwe.com
dgacioch@mwe.com
mtheophila@mwe.com
ndobrott@mwe.com
*Counsel to GoHealth, Inc.*

*/s/ Richard Westling*
Richard Westling (*pro hac vice*)
PROSKAUER ROSE, LP
1001 Pennsylvania Ave., NW, Suite 600 South
Washington, DC 20004
Telephone: (202) 416-5876
rwestling@proskauer.com
*Counsel to SelectQuote, Inc.*

*/s/ Erik W. Weibust*
Erik W. Weibust (BBO #663270)
Clay Lee (pro hac vice)
EPSTEIN BECKER & GREEN PC
One Financial Center, Suite 1520
Boston, MA 02111
Telephone: (617) 603-1090
eweibust@ebglaw.com
clee@ebglaw.com
*Counsel to SelectQuote, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via ECF on August 19, 2025.

*/s/ Zachary R. Hafer*
Zachary R. Hafer
Dated: August 19, 2025

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that counsel for Defendants conferred in good faith with counsel for the Government regarding the foregoing motion in an effort to resolve or narrow the issues contained therein.

*/s/ Zachary R. Hafer*
Zachary R. Hafer
Dated: August 19, 2025