UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ANDREW SHEA,<br><br>*Plaintiff*,<br><br>v.<br><br>eHEALTH, Inc., *et al.*,<br><br>*Defendants.* | Civil Action No. 21-cv-11777-DJC |

### MOTION FOR LEAVE TO CONDUCT LIMITED DISCOVERY REGARDING RELATOR'S UNAUTHORIZED POSSESSION OF PROTECTED MATERIALS

Defendants eHealth Inc. and eHealthInsurance Services, Inc. (together, "eHealth") move under Federal Rules of Civil Procedure 26 and 30 for (a) leave to depose relator Andrew Shea ("Relator") regarding his unauthorized possession of eHealth's attorney-client privileged and work-product-protected files, and (b) an order compelling Relator to produce the "written disclosure" he provided to the Government pursuant to 31 U.S.C. § 3730(b)(2).

Relator's counsel recently disclosed to eHealth that Relator used a personal tablet to photograph materials on his eHealth-administered laptop and cellular phone that may be privileged and/or work product. At least some of these photographed materials were seen by Relator's counsel. Many surrounding details remain unclear, but eHealth's initial review confirms that the materials include, *inter alia*, (a) communications with eHealth's in-house attorneys concerning the subject of this litigation and (b) files quoted in Relator's pleadings. eHealth respectfully requests leave to conduct limited early discovery to determine whether and the extent to which Relator's unauthorized possession of protected materials has tainted this case.

## BACKGROUND

### A. The Litigation

Relator was an eHealth employee from January 2017 until December 2021. ECF No. 40 ¶ 15. As an employee, Relator signed several contracts in which he committed not to disclose eHealth's non-public information and further committed to return eHealth files and copies thereof upon separating from the company. *See* Ex. A at 1; Ex. B at 7; Ex. C.[1]

On November 2, 2021—while still employed at eHealth—Relator filed a *Qui Tam* Complaint under seal. ECF No. 1. As to eHealth, the *Qui Tam* Complaint alleged that several insurance carriers paid eHealth to market their Medicare Advantage plans, that these payments violated regulations issued by the Centers for Medicare and Medicaid Services ("CMS"), and that these payments were "kickbacks." *See*, *e.g.*, *id.* ¶¶ 2, 11–12. The *Qui Tam* Complaint quoted from and referred to internal eHealth files and communications. *See*, *e.g.*, *id.* ¶¶ 67–227.

In January 2025, the Government intervened as to eHealth and other Defendants. ECF No. 34 at 1. The case remained under seal.

On April 29, 2025, Relator filed—still under seal—an Amended *Qui Tam* Complaint ("Amended Complaint") including substantially similar allegations against eHealth related to marketing payments from insurance carriers. ECF No. 40.

Two days later, the Government filed its own Complaint, which was unsealed that day along with Relator's *Qui Tam* Complaint and the Amended Complaint. ECF No. 41. Like Relator, the Government alleged that certain insurance carriers made payments to eHealth that violated CMS regulations for marketing payments and that the payments were "kickbacks." *See*, *e.g.*, *id.*

---

[1] "Ex. _" refers to exhibits to the simultaneously filed Declaration of Zachary R. Hafer.

¶ 98–100. And like Relator's Complaint, the Government's Complaint quoted from and referred to internal eHealth files and communications.

On August 15, 2025, this Court granted Defendants' motion to stay proceedings concerning Relator, ECF No. 111, and entered a briefing schedule for motions to dismiss, ECF No. 109.

Defendants moved to dismiss the Complaint on August 19, 2025, ECF Nos. 114, 115, 116, 117; the Government opposed on October 20, 2025, ECF Nos. 120, 121, 122; Defendants' reply is due December 19, 2025, ECF No. 109; and a hearing is set for January, ECF No. 110.

### B.     Relator's Unauthorized Possession of Protected Materials

On October 24, 2025—nearly four years after the original *Qui Tam* Complaint was filed, six months after the case was unsealed, and in the middle of briefing on motions to dismiss—Relator's counsel informed eHealth that Relator possessed materials potentially protected by eHealth's attorney-client privilege and the work-product doctrine. Hafer Decl. ¶ 5.

Shortly thereafter, at eHealth's request, the materials were provided to counsel.[2] The materials were provided in two tranches. The first tranche ("First Tranche") consisted of several documents merged into a single 20-page PDF file. As to this tranche, Relator's counsel stated that he had seen the contents, assessed that "they might be privileged," "segregated the documents from other documents [Relator] provided to me," did not rely on these documents when preparing Relator's pleadings, and did not share or discuss the contents with the Government. Ex. D at 1. The second tranche ("Second Tranche") consisted of several documents merged into a single 273-page PDF file. Relator's counsel stated that neither he nor anyone working with him had seen the contents of the Second Tranche, that Relator's counsel had never discussed the contents of the

---

[2] eHealth can provide any or all of the materials to the Court for *in camera* review.

Second Tranche with Relator, and that Relator "used a tablet device" to "selectively take photos" of eHealth files and communications "while he was still an eHealth employee." *Id.* at 1–2.

Based on eHealth's review of the materials and correspondence with Relator's counsel:

- Both the First and Second Tranches contain privileged communications with eHealth's in-house attorneys.

- Several privileged communications relate to the subject-matter of this litigation. As one example, and without waiving any protection, the materials include communications in which eHealth in-house attorneys are asked to opine on agreements concerning marketing payments between eHealth and the insurance-carrier Defendants during the period of 2016-2021, with reference to compliance with rules and guidance promulgated by CMS.

- Several documents in the Second Tranche—that is, the tranche that Relator's counsel stated was neither seen nor relied upon in preparing any pleadings—are quoted or otherwise referenced in the original *Qui Tam* Complaint and/or Relator's Amended Complaint.

- Several of the documents appear (*e.g.*, based on a date-stamp) to have been photographed by Relator around the time the original *Qui Tam* Complaint was filed (*i.e.*, late summer and fall of 2021). In one exchange from less than one week before the original *Qui Tam* Complaint was filed, Relator initiated a conversation with an in-house eHealth attorney that related to compliance with CMS rules. It is not clear whether Relator engaged in or photographed these or other conversations at the direction of counsel.[3]

---

[3] The timestamps of certain materials in the Second Tranche suggest that, by August 2021, Relator was trying to bait co-workers into making statements that fit the Government's theories in this case. It is unclear whether Relator's improper access to protected materials informed his baiting. For instance, the Second Tranche includes several photographs with August 25, 2021 time-stamps, the same date on which Relator initiated a conversation with a co-worker that is now featured prominently in the Government's complaint, albeit lacking critical context. Specifically, the Government's Complaint alleges that a "Mr. Kinkead" at eHealth was asked by a "colleague" (purportedly in an organic conversation): "[c]an't we just say the money is for whatever and then we avoid the scrutiny? Like say it's for training or some bullshit whatever[.]" ECF No. 41 ¶ 301. The Government, however, omits that this conversation occurred on August 25, 2021, and the unnamed "colleague" was *Relator*, Andrew Shea. Ex. E. In fact, in the full chat, which the Government does not include in or attach to the Complaint, when Relator first attempts to elicit a statement from Mr. Kinkead, Mr. Kinkead responds "I'm not sure I follow." *Id.* at 1. So, Relator tries again by feigning ignorance with leading questions ("Is it OK to pay the money based on per policy production? That's a genuine question … I don't know the answer" and "isn't a lot just the old fashioned 'I give you a few bucks, you send me a few more apps' kind of thing?"), and when Relator still does not get the answer he is looking for, only then does Relator urge Mr. Kinkead to agree, "[c]an't we just say …. it's for … some bullshit." *Id.* at 1–2.

4

Yesterday, Relator's counsel provided a third tranche of materials that Relator took from eHealth prior to separating from the company ("Third Tranche"). Hafer Decl. ¶ 8. The Third Tranche consisted of several documents merged into a 21-page PDF file. *Id.* eHealth's understanding is that the materials in the Third Tranche, like those in the First Tranche, were reviewed by Relator's counsel. *Id.* Upon initial review, the Third Tranche includes privileged communications with in-house attorneys at eHealth regarding the subject of this litigation. It is unclear when Relator came into possession of these materials; when Relator's counsel became aware of these materials; what steps were taken, if any, to prevent Relator's and Relator's counsel's access to these materials from tainting the case; and why these materials were not included in the First or Second Tranches (both of which were sent over a month earlier). It is also not clear how many more potentially privileged (and other) files remain in Relator's possession that have not yet been provided to eHealth.

## **ARGUMENT**

Courts typically defer discovery while a motion to dismiss is pending and prior to a Federal Rule of Civil Procedure 26(f) conference, but may order expedited discovery, including depositions, for "good cause." *See Jimenez v. Nielsen*, 326 F.R.D. 357, 361 (D. Mass. 2018); Fed. R. Civ. P. 26(d)(1); *id.* 30(a)(2)(A)(iii). Although the "First Circuit has not articulated what constitutes good cause for expedited discovery, … multiple courts … have adopted the reasonableness standard from *Momenta Pharms.*, 765 F. Supp. 2d 87, 88 (D. Mass. 2011)." *KPM Analytics N. Am. v. Blue Sun Sci., LLC*, 540 F. Supp. 3d 145, 146 (D. Mass. 2021). Under that standard, good cause "exists if the request is reasonable in light of all the circumstances, when considering the purpose …, the ability of the discovery to preclude demonstrated irreparable harm,

the plaintiff's likelihood of success on the merits, the burden of discovery on the defendant, and the degree of prematurity." *Id.* (cleaned up). Courts have allowed early discovery "in a variety of circumstances." *Patrick Collins, Inc. v. Doe*, 286 F.R.D. 160, 163 (D. Mass. 2012).

This Court should grant this motion and authorize early discovery, for several reasons.

### A. This Court Should Permit eHealth to Take an Early Deposition of Relator

**1.** eHealth must learn whether and to what extent Relator's unauthorized access to protected materials has tainted this case. It is by now clear that Relator, in violation of eHealth's policies, took photographs of communications with in-house attorneys about the subject-matter of this litigation and materials referenced in Relator's pleadings. But it is unclear exactly when Relator's counsel became aware of the materials; what steps, if any, were taken to prevent the files from tainting their or the Government's case; whether Relator collected the materials at the direction of counsel; and how Relator—a non-attorney—conducted a privilege review. It is also not clear why Relator's counsel did not bring this matter to eHealth's or (as far as eHealth can tell) the Court's attention until over four years after it appears that Relator came into possession of the files, almost six months after the case was unsealed, and months into briefing on the motions to dismiss. *See* Gregg Shapiro, *What to Do When a Whistleblower is an Attorney, or the Whistleblower Provides Counsel with Potentially Privileged Documents* (Mar. 15, 2023), https://perma.cc/B2LS-VXDS ("Shapiro Blog") ("Once the case is out from under seal, relator's counsel should *promptly* work with defense counsel…." (emphasis added)); *In re Examination of Privilege Claims*, 2016 WL 11164791, at *1 (W.D. Wash. May 20, 2016) (noting that potentially privileged documents in a relator's possession were brought to the court's attention "while the government was still considering whether to intervene").

6

eHealth needs to probe these issues quickly. That is so because assertions of privilege and work-product protection must be made "expeditiously." *Hache v. AIG Claims, Inc.*, 607 F. Supp. 3d 100, 116 (D. Mass. 2022) (quotation marks omitted). It is doubly so because—without a prompt deposition—the issue may compound. Once an adverse party gains access to protected materials, it is hard to pinpoint all the ways in which the access may influence the party's strategy and prejudice the party whose protections have been invaded. *Cf. United States v. Levy*, 577 F.2d 200, 208 (3d Cir. 1978) (noting uncertainty "as to how the government's knowledge of any part of the defense strategy might benefit the government in its further investigation of the case, in the subtle process of pretrial discussion with potential witnesses, in the selection of jurors, or in the dynamics of trial"). Without further inquiry here, (a) it is possible that Relator's counsel and the Government may unknowingly act on information that came from Relator's access to protected materials, and (b) it will be difficult to know what steps are needed, if any, to prevent additional disclosures from worsening any taint.[4]

Depending on the scope and severity of the problem, additional remedies may be required. *See*, *e.g.*, *Jackson v. Microsoft Corp.*, 211 F.R.D. 423, 431 (W.D. Wa. 2002) ("Plaintiff's secretive behavior and clear reliance on the stolen documents … only makes dismissal more appropriate."); *Perna v. Electronic Data Systems, Corp.*, 916 F. Supp. 388, 403 (D.N.J. 1995) (dismissing where the "evidence clearly demonstrates a deliberate, willful and intentional act on behalf of [the

---

[4] For example, several of the materials in Relator's possession are communications with eHealth's in-house attorneys regarding the subject matter of this case. Unlike a relator who passively obtains protected materials by downloading a large undifferentiated batch of electronic files, Relator here read each file, determined that it was relevant and helpful to his case, and took a photograph. It is entirely possible that exposure to privileged materials influenced Relator's discussions with his counsel and—assuming that Relator's counsel and the Government have been in contact the last four years—influenced the Government's investigation and decision to intervene.

claimant] to gain unauthorized access to his adversar[y's] documents"); *United States ex rel. Frazier v. IASIS Healthcare Corp.*, 2012 WL 130332, at *15 (D. Ariz. 2012) (disqualifying relator's counsel for "withholding [defendant's] documents and failing to seek either a court ruling while the case was sealed or failing to contact [defendant] after the seal was lifted"); *State ex rel. Rogers v. Bancorp Bank*, 307 A.3d 360, 384–86 (Del. Super. Ct. 2023) (disqualifying relator's counsel "to protect the integrity of the … proceedings" and taking into account the fact that the state intervenor there had not "received[] any of the privileged documents at issue"); *United States ex rel. Hartpence v. Kinetic Concepts, Inc.*, 2013 WL 2278122, at *2–3 (C.D. Cal. May 20, 2013) (similar where relator's counsel failed, among other things, to "consult[] the court about what to do about privilege issues"; noting that the at-issue materials were not "considered in the government's investigation"); *Clark v. Superior Ct.*, 196 Cal. App. 4th 37, 54 (Cal. Ct. App. 2011) (affirming disqualification as a "prophylactic, not punitive" remedy to "preserve the integrity of the judicial proceedings" (quotation marks omitted)).

    **2.**    Invasions of privilege and work-product protection are highly prejudicial. *See*, *e.g.*, *United States v. Korf*, 11 F.4th 1235, 1247 (11th Cir. 2021) (per curiam) ("Once [an opposing party] improperly reviews privileged materials, the damage to the [privilege holder's] interests is definitive and complete." (quotation marks omitted)); *United States v. DeCologero*, 530 F.3d 36, 64 (1st Cir. 2008) (holding that once a defendant in a criminal case shows that the government has intruded on the attorney-client relationship, "[t]he burden then shifts to the government to show that the defendant was not prejudiced; that burden is a demanding one").

    **3.**    The deposition would not meaningfully burden Relator or the Government. Rather than seeking broader leave to serve interrogatories, requests for production, and/or an evidentiary hearing, eHealth is seeking a targeted deposition and one specific document discussed *infra*. *See*,

*e.g.*, *KPM Analytics N. Am.*, 540 F. Supp. 3d at 147 (granting motion for expedited discovery and authorizing "ten requests for production" and "three depositions"); *Jimenez*, 326 F.R.D. at 362 (finding no "unfair or undue burden" imposed by the request for expedited depositions); *cf. United States v. Regeneron Pharm., Inc.*, 20-CV-11217, ECF No. 281 at 2–3 (D. Mass. Apr. 21, 2023) (noting False Claims Act defendants had the chance to depose individual regarding "unauthorized" possession of files); *Regeneron Pharm., Inc.*, 20-CV-11217, ECF No. 169-18 (D. Mass. May 26, 2022) (deposition transcript). That this deposition would be limited in scope would further reduce any burden on Relator or the Government.

4. An early deposition on this issue is ultimately in the interest of all parties and the integrity of the judicial process. If there is a taint, it should be stamped out immediately. If not, then perhaps the best way to put the matter to rest is with a deposition.

5. Because the requested deposition would focus on issues separate from the merits of this litigation, eHealth requests that this deposition not be counted toward the time limit or one-deposition-per-deponent limit set forth in Federal Rule of Civil Procedure 30. *See* Fed. R. Civ. P. 30(d)(1) (stating depositions are "limited to 1 day of 7 hours" "[u]nless otherwise … ordered by the court"); *id.* 30(a)(2)(ii) (leave of court is required if the "deponent has already been deposed in the case"); *see also United States ex rel. Ferris v. Afognak Native Corp.*, 15-CV-0150, ECF No. 199 at 13–14 (D. Alaska Sept. 13, 2016) ("*Afognak Native* Order") (granting leave to depose relator regarding unauthorized access to privileged materials "without forfeiting their right to take another deposition of relator as to other issues later on"); *cf. also In re Telexfree Sec. Litig.*, 2024 WL 2306195, at *2–3 (D. Mass. May 21, 2024) (granting leave to take deposition for fourteen hours instead of seven); *Le v. Diligence, Inc.*, 312 F.R.D. 245, 248 (D. Mass. 2015) (granting leave to re-depose the same individual).

6.      This motion seeks leave to conduct an early deposition of Relator; it does not seek a ruling preemptively addressing how the deposition is to be conducted.  It is likely that a deposition addressing unauthorized access to privileged materials will require the parties to deploy redactions or other tools to preserve eHealth's privilege.  *Cf.* Shapiro Blog (suggesting that one "approach is to hire filter counsel" to "help to avoid any privilege missteps").  If leave were granted, eHealth would confer with counsel for both Relator and the Government on the mechanics of the deposition.  For now, however, the only issue presented by eHealth's motion is whether to permit a deposition.  *See*, *e.g.*, *Afognak Native* Order at 13 (granting motion to "compel relator to appear at a deposition regarding the receipt, use, and disclosure of … privileged documents" and not addressing the mechanics of the deposition).

### B.      This Court Should Compel Relator to Produce its Disclosure Statement

1.      For similar reasons, this Court should compel Relator to produce the "written disclosure" that all False Claims Act relators provide to the Government.  When a relator initiates a False Claims Act case, the relator must provide a "written disclosure of substantially all material evidence and information the person possesses" to the Government.  31 U.S.C. § 3730(b)(2).  These disclosure statements can be discoverable.  *See*, *e.g.*, *United States ex rel. Burns v. A.D. Roe Co.*, 904 F. Supp. 592, 593 (W.D. Ky. 1995) ("Nothing in the statute mandates, or even suggests, that these statements are privileged."); *United States ex rel. Robinson v. Northrop Corp.*, 824 F. Supp. 830, 839 (N.D. Ill. 1993) (compelling production of disclosure statement); *cf. also United States v. Pfizer, Inc.*, 188 F. Supp. 3d 122, 136 (D. Mass. 2016) (noting court "granted … motion to compel" production of "disclosure statements" made under 31 U.S.C. § 3730(e)(4)).  Here, reviewing Relator's disclosure statement will be an important step in determining whether and when Relator revealed eHealth's protected materials to the Government.

**2.** If Relator objects that the written disclosure is protected work product, this Court can—if it deems necessary—"examine the disclosure statement *in camera* to determine whether it can be produced in full, in part, or at all." *United States ex rel. O'Laughlin v. Radiation Therapy Servs. P.S.C.*, 2023 WL 12007336, at *5 (E.D. Ky. July 27, 2023).

## **CONCLUSION**

eHealth respectfully requests that this Court:

A.  Grant this motion;

B.  Permit eHealth to take an early deposition of Relator concerning his possession of material protected by eHealth's attorney-client privilege and the work-product doctrine, without counting toward the time limit or one-deposition-per-deponent limit set forth in Federal Rule of Civil Procedure 30;

C.  Compel Relator to produce to eHealth the "written disclosure" statement(s) that Relator provided to the Government pursuant to 31 U.S.C. § 3730(b)(2); and

D.  To the extent this Court finds necessary, lift the stay on proceedings related to Relator's claims entered by this Court (ECF No. 111) for the limited purpose of facilitating the foregoing relief.

Dated: December 9, 2025                                      Respectfully submitted,

*/s/ Zachary R. Hafer*
Zachary R. Hafer (BBO #569389)
Adam M. Katz (BBO #706834)
Timothy J. Conklin (BBO #710857)
Isabel C. McGrath (BBO #712925)
SIMPSON THACHER & BARTLETT LLP
855 Boylston Street
Boston, MA 02116
Telephone: (617) 778-9200
zachary.hafer@stblaw.com
adam.katz@stblaw.com
timothy.conklin@stblaw.com
isabel.mcgrath@stblaw.com

*Counsel to eHealth, Inc. and eHealthInsurance Services, Inc.*

## **CERTIFICATE OF SERVICE**

    I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via ECF on December 9, 2025.

*/s/ Zachary R. Hafer*
Zachary R. Hafer

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that movants' counsel conferred with counsel for Relator and the Government in good faith to resolve or narrow the issues presented by this motion. Undersigned counsel conferred with counsel for Relator and the Government by email, by phone, and by video conference. The Government has advised that it opposes this motion. Relator's counsel advised that he does not assent to this motion and proposed that Relator provide answers to interrogatories in lieu of sitting for a deposition or producing the disclosure statement. eHealth is open to receiving written information from Relator's counsel to help focus and streamline a deposition, in addition to the deposition and disclosure statement. However, the interrogatory process is, standing alone, certain to be costlier, more time-consuming, and less probative than a deposition and the disclosure statement.

*/s/ Zachary R. Hafer*
Zachary R. Hafer