**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| UNITED STATES OF AMERICA<br>*ex rel.* ANDREW SHEA,<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>eHEALTH, INC., et al.,<br><br>　　　　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　Civil Action No. 21-cv-11777-DJC<br>)　Hon. Denise J. Casper<br>)<br>)<br>)<br>)<br>)<br>) |

**REPLY IN FURTHER SUPPORT OF TPMO DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS THE <u>GOVERNMENT'S COMPLAINT IN PARTIAL INTERVENTION</u>**

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ...........................................................................................................................1

ARGUMENT ...................................................................................................................................2

I.        The Government Misconstrues the Law Governing Non-Submitter Causation .........2

II.       The Government Has Not Pled That TPMOs Caused the Submission of
False Claims (Counts I–III) ........................................................................................3

III.      The Government Fails to Plead That TPMOs Caused False Records
(Counts IV–V) .............................................................................................................5

IV.      The Government Fails to Plead a Conspiracy Claim (Counts VI–VII) ......................5

CONCLUSION.................................................................................................................................5

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.*
  597 F. Supp. 2d 1280 (M.D. Fla. 2009) ........................................................................................ 3

*United States ex rel. Clarke v. Aegerion Pharms. Inc.,*
  2019 WL 1437914 (D. Mass. Mar. 31, 2019) ............................................................................... 5

*Eldridge v. Gordon Bros. Grp., LLC,*
  863 F.3d 66 (1st Cir. 2017) .......................................................................................................... 4

*United States ex rel. Franklin v. Parke-Davis,*
  147 F. Supp. 2d 39 (D. Mass. 2001) ............................................................................................ 3

*United States ex rel. Hutcheson v. Blackstone Medical, Inc.,*
  647 F.3d 377 (1st Cir. 2011) ............................................................................................... 1, 2, 3

*United States ex rel. Martino-Fleming v. South Bay,*
  2018 WL 4539684 (D. Mass. Sept. 21, 2018) ............................................................................. 3

*United States ex rel. Martino-Fleming v. South Bay,*
  334 F. Supp. 3d 394 (D. Mass. 2018) .......................................................................................... 3

*Mason v. Medline Industries, Inc.,*
  731 F. Supp. 2d 730 (N.D. Ill. 2010) .......................................................................................... 3

*United States ex rel. Morsell v. NortonLifeLock, Inc.,*
  651 F. Supp. 3d 95 (D.D.C. 2023) .............................................................................................. 2

*United States ex rel. Roycroft v. Geo Group, Inc.,*
  722 F. App'x 404 (6th Cir. 2018) ................................................................................................ 5

*United States v. President and Fellows of Harvard College,*
  323 F. Supp. 2d 151 (D. Mass. 2004) ...................................................................................... 3, 5

*United States v. Regeneron Pharm., Inc.,*
  2023 WL 6296393 (D. Mass. Sept. 27, 2023) ............................................................................. 3

*United States v. Rivera,*
  55 F.3d 703 (1st Cir. 1995) .......................................................................................................... 4

*United States v. Teva Pharm. USA, Inc.,*
  682 F. Supp. 3d 142 (D. Mass. 2023) .......................................................................................... 3

**Statutes**

31 U.S.C. § 3729 ........................................................................................................... 1, 2, 5

**INTRODUCTION**

The Government must plead with specificity that a defendant who does not itself submit allegedly false claims "cause[d]" their submission. 31 U.S.C. §§ 3729(a)(1)(A)-(B).[1] The Government does not dispute causation is an element of proof against a non-submitting defendant. Yet the Complaint does not allege how the TPMOs had any role in the certifications that MAOs made in their claims to CMS. The Government suggests it need only show that the TPMOs were aware that MAOs would be paid by the Government, Opp. 5–6, which is not the law and would render the FCA's causation requirement meaningless.

The Government's opposition principally rests on two faulty pillars. *First*, the Government contends that *United States ex rel. Hutcheson v. Blackstone Medical, Inc.*, 647 F.3d 377 (1st Cir. 2011)—a case about *falsity*, not *causation*—is "[c]ontrolling" here and *sub silentio* "abrogate[d]" prior cases holding that it is not enough to allege that a defendant merely knew of or participated in a fraudulent scheme. Opp. 3, 6. But that case *did not address* the standard for pleading (or proving) causation. *Second*, unable to allege the TPMOs caused the submission of any actual "claim," the Government contorts the definition of "claim." On the Government's telling, the TPMOs helped customers enroll and "enrollments *are* 'claims.'" Opp. 1. But they are not: a claim is a "request or demand . . . for money or property" and enrollments request nothing. 31 U.S.C. § 3729(b)(2)(A). The Government's bizarre suggestion that Defendants *conceded* claims are enrollments (the opposite is true, Def. Br. 32) is telling. Opp. 7–8. The only possible "claims" here are periodic submissions of data and associated certifications from the MAOs to CMS. The TPMOs did not cause those claims, and the Government did not plead otherwise.

---

[1] "TPMO Br." refers to ECF No. 116. "Def. Br." refers to ECF No. 115. "Opp." refers to ECF No. 121. "Opp. to CVS" refers to ECF No. 122. All emphases are added unless stated otherwise.

1

**ARGUMENT**

**I.     The Government Misconstrues the Law Governing Non-Submitter Causation**

For a non-submitting party to have "caused" the submission of a claim under 31 U.S.C. § 3729(a)(1)(A), it is inadequate to allege only that the party knew of or participated in an underlying scheme. TPMO Br. 4–5. Rather than address the cases cited by the TPMOs or the Complaint's failure to satisfy this standard, the Government points to *Hutcheson* and asks this Court to apply a purported standard that would sweep in the whole "supply chain." Opp. 3–6.

That is wrong many times over. *Hutcheson* was about *falsity*, not *causation*; the court did not address the causation standard for a non-submitting entity *at all* other than to remark in passing that causation is "hardly boundless." 647 F.3d at 391. The question, which is not at issue here, was whether "unlawful actions" by a non-submitting party could "render the [submitting party's] claims . . . false." *Id.* at 386. In that context, the court reached the unexceptional conclusion that the actions of both "non-submitting and submitting entities may render the underlying claim or statements *false or fraudulent*." *Id.* at 389. Holding otherwise would disregard the statutory language providing that a non-submitter can still "cause[]" the presentment of a false claim. *See id.* The Court did not address what must be shown to plead (or prove) causation. Leaving that aside, *Hutcheson* involved a very different scenario: the non-submitting entity was the architect of a kickback scheme that led providers to "unwittingly" submit fraudulent claims. *Id.* at 378. In other words, the non-submitting party caused the false claims because it was the "driving force" behind the scheme. *See, e.g.*, *United States ex rel. Morsell v. NortonLifeLock, Inc.*, 651 F. Supp. 3d 95, 188 (D.D.C. 2023). But the Complaint here rests on the opposite theory: that the *submitting* parties (*i.e.*, the MAOs) "pressure[d]" the *non-submitting* parties (*i.e.*, the TPMOs) to enroll beneficiaries. *See*, *e.g.*, Compl. p. 1; *id.* ¶¶ 313, 340, 496, 579.

The Government next tries to use *Hutcheson* to jettison holdings that—unlike *Hutcheson*—

2

actually address the causation standard—most prominently, *United States v. President and Fellows of Harvard College*, 323 F. Supp. 2d 151 (D. Mass. 2004).  The Government says *Harvard College* was "abrogate[d]" by *Hutcheson* "to the extent they are inconsistent," Opp. 6.  But again, because *Hutcheson* does not address the causation standard there is no inconsistency.  In fact, *Harvard College* has been cited routinely since *Hutcheson* for the rule that "mere knowledge" of claims is inadequate and "participation in the claims process is required."  *United States ex rel. Martino-Fleming v. South Bay*, 2018 WL 4539684, at *4 (D. Mass. Sept. 21, 2018); *see*, *e.g.*, *United States ex rel. Martino-Fleming v. South Bay*, 334 F. Supp. 3d 394, 406 (D. Mass. 2018).  The Government largely ignores the TPMOs' other similar cases.  TPMO Br. 4–5.[2]

The Government's remaining cases are puzzling.  Several do not address causation for non-submitting entities at all.[3]  And one case involved a non-submitting pharmaceutical company that was not only the architect of the "campaign to use false statements to promote increased [off-label] prescriptions," but also participated in the claims process by "coach[ing]" the submitting "doctors on how to conceal the off-label nature of the prescription."  *United States ex rel. Franklin v. Parke-Davis*, 147 F. Supp. 2d 39, 45–46 (D. Mass. 2001).  The Government's cases are inapposite.

## II. The Government Has Not Pled That TPMOs Caused the Submission of False Claims (Counts I–III)

The Complaint does not plead that the TPMOs were involved in the MAO's submissions of data and associated certifications to CMS—*i.e.*, the claims.  Compl. §§ V.A, V.B, VI.  To try

---

[2] The Government quibbles with the "attenuat[ion]" of causality in *United States ex rel. Bane v. Breathe Easy Pulmonary Servs., Inc.* (Opp. 7) but ignores that the *reason* for the attenuation was the non-submitter's lack of "instruction to," "control over," and "participat[ion] in" the submitter's "claims procedures" and "submission of bills to Medicare."  597 F. Supp. 2d 1280, 1292 (M.D. Fla. 2009).

[3] *United States v. Regeneron Pharm., Inc.*, 2023 WL 6296393, at *7 (D. Mass. Sept. 27, 2023); *United States v. Teva Pharm. USA, Inc.*, 682 F. Supp. 3d 142, 144 (D. Mass. 2023).  The Government also quotes *Mason v. Medline Industries, Inc*., 731 F. Supp. 2d 730 (N.D. Ill. 2010) (Opp. 6), but the quotation is from a scienter discussion in a case that, like *Hutcheson*, involved a non-submitting entity that was the architect of a kickback scheme.  *See id.* at 740.

3

sweeping in the TPMOs, the Government instead argues that the TPMOs were involved in submitting claims because TPMOs (1) helped customers enroll and (2) "enrollments are 'claims.'" Opp. 7–8. To start, the Government boldly misdescribes Defendants as "acknowledge[ing] . . . enrollments are 'claims,'" *id.*, when Defendants argued the opposite: "A claim under the FCA is an actual 'request or demand . . . for money or property' from a government payor, ***and an enrollment in an MA Plan is neither***." Def. Br. 32 (quoting 31 U.S.C. § 3729(b)(2)).[4] The Government ignores this argument and has thus waived its opposition. *See*, *e.g.*, *Eldridge v. Gordon Bros. Grp., LLC*, 863 F.3d 66, 83 (1st Cir. 2017). And while the Government's brief concludes that "enrollments are 'claims'" (Opp. 1, 7), the brief also says enrollments are just "the basis of claims" (*id.* 10) or "part of the 'claims process'" (*id.* 7). But if all that were required was showing that underlying conduct formed the "basis of claims," then the Government would only need to allege involvement in an underlying scheme, not causation. That is not the law. *See* TPMO Br. 4–5. Nor does it make any sense. As the Government elsewhere recognizes, what makes a claim false is the "representation that there is no AKS violation," Opp. to CVS 5, and a mere enrollment in a plan involves no representations to CMS at all.

Nor does the Government's fallback argument that it was foreseeable to the TPMOs that the MAOs would receive capitated payments (Opp. 5–6) save its claims. The statute "attaches liability, not to the . . . government's wrongful payment, but to the 'claim for payment.'" *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995). Again, the Government does not allege in its Complaint (or argue in its opposition) that the TPMOs had any connection to or involvement in the certifications to CMS. This forecloses the Government's claims.

---

[4] Even more strangely, the Government quotes the Complaint to support its assertion that enrollments are claims and then characterizes statements in the Complaint as "Defendant Brokers' own words." Opp. 8.

## III. The Government Fails to Plead That TPMOs Caused False Records (Counts IV–V)

The Government's counterarguments on its 31 U.S.C. § 3729(a)(1)(B) claims are unserious. The Government first takes issue with the length of the TPMO's argument on § 3729(a)(1)(B) (Opp. 8) even though these counts are duplicative of its counts under § 3729(a)(1)(A).[5] The inquiry is identical. Second, the TPMOs never argued they needed to know the "specific language" in the certifications to be liable. Opp. 9. The problem is that the Complaint does not allege, as it must, that the TPMOs had any role in the certifications, let alone knew about them. TPMO Br. 6. Last, whether the TPMOs knew they needed to "abide" by all laws (Opp. 9), has no bearing on whether they caused claims to be submitted—that inquiry turns on *conduct*. *Harvard College*, 323 F. Supp. 2d at 186–88.

## IV. The Government Fails to Plead a Conspiracy Claim (Counts VI–VII)

The Government says the TPMOs relied on a "case that examined the pre-2009 version of the FCA's conspiracy provision" and thus "addressed the wrong legal standard." Opp. 10. This is wrong, which is why dozens of courts have applied this standard since 2009. *See*, *e.g.*, *United States ex rel. Clarke v. Aegerion Pharms. Inc.*, 2019 WL 1437914, at *8 (D. Mass. Mar. 31, 2019) ("[A] relator must show that the defendant conspired with one or more persons *to get a false or fraudulent claim allowed or paid by the United States*" (cleaned up)). The Government cannot use conspiracy to circumvent causation.

## **CONCLUSION**

The Government's claims against the TPMOs should be dismissed with prejudice and this Court should deny the Government's throwaway request for leave to amend.

---

[5] The Court need not even address this contention because the Government has not identified a false record or statement that is distinct from any allegedly false claims. *See, e.g.*, *United States ex rel. Roycroft v. Geo Group, Inc.*, 722 F. App'x 404, 406 n.1 (6th Cir. 2018).

Dated:  December 19, 2025

Respectfully Submitted,

By: /s/ *Zachary R. Hafer*
Zachary R. Hafer (BBO #569389)
Adam M. Katz (BBO #706834)
Timothy J. Conklin (BBO #710857)
Isabel C. McGrath (BBO #712925)
SIMPSON THACHER & BARTLETT LLP
855 Boylston Street
Boston, MA 02116
Telephone: (617) 778-9200
zachary.hafer@stblaw.com
adam.katz@stblaw.com
isabel.mcgrath@stblaw.com
*Counsel for eHealth, Inc. and eHealthInsurance Services, Inc.*

*/s/ Laura McLane*
Laura McLane (BBO #644573)
David Quinn Gacioch (BBO #660784)
Mara Theophila (BBO #704763)
Natasha Dobrott (BBO #705287)
MCDERMOTT WILL & SCHULTE LLP
200 Clarendon Street, Floor 58 Boston, MA 02116
Telephone: (617) 535-4410
lmclane@mwe.com
dgacioch@mwe.com
mtheophila@mwe.com
ndobrott@mwe.com
*Counsel for GoHealth, Inc.*

*/s/ Richard Westling*
Richard Westling (*pro hac vice*)
PROSKAUER ROSE, LP
1001 Pennsylvania Ave., NW
Suite 600 South
Washington, DC 20004-2533
Telephone: (202) 416-5876
rwestling@proskauer.com
*Counsel for SelectQuote, Inc.*

*/s/ Erik W. Weibust*
Erik W. Weibust (BBO #663270)
Clay Lee (*pro hac vice*)
EPSTEIN BECKER & GREEN PC
One Financial Center, Suite 1520
Boston, MA 02111
Telephone: (617) 603-1090
eweibust@ebglaw.com
clee@ebglaw.com
*Counsel for SelectQuote, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served upon all counsel of record via ECF on December 19, 2025.

<u>/s/ Zachary R. Hafer</u><br>
Zachary R. Hafer

**CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1**

Pursuant to Local Rule 7.1(a)(2), I hereby certify that counsel for Defendants conferred in good faith with counsel for the Government regarding the foregoing motion in an effort to resolve or narrow the issues contained therein.

*/s/ Zachary R. Hafer*
Zachary R. Hafer
