**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ANDREW SHEA, <br>        Plaintiff <br><br> v. <br><br> eHEALTH, Inc., *et al.*, <br>        Defendants. | )<br>)<br>)<br>)<br>)    Civil Action No. 21-cv-11777-DJC<br>)<br>)<br>)<br>)<br>) |

### UNOPPOSED MOTION TO EXTEND THE STAY OF ALL PROCEEDINGS CONCERNING RELATOR'S *QUI TAM* CLAIMS

Defendants eHealth Inc. and eHealthInsurance Services, Inc. (collectively, "eHealth"), GoHealth, Inc. ("GoHealth"), SelectQuote, Inc. ("SelectQuote"), Humana, Inc. ("Humana"), and WellCare Health Plans, Inc. ("WellCare") move unopposed to extend the stay of all proceedings regarding *qui tam* relator Andrew Shea's ("Relator") claims from March 25, 2026, through May 26, 2026—the date of the scheduling conference set by this Honorable Court in this case.[1]  The requested extension will give the parties an opportunity to discuss a further extension of the stay with the Court at the May 26 scheduling conference with the benefit of additional time to assess the implications of, among other things, the March 26, 2026 Civil Investigative Demand ("CID") served on WellCare concerning the Department of Justice's ("DOJ") ongoing investigation of claims relating to WellCare.[2]

---

[1] The Relator also brings claims against Aetna Life Insurance Company ("Aetna") and Elevance Health, Inc. (f/k/a Anthem, Inc.) ("Elevance Health"). Aetna and Elevance Health have not been served, and Defendants' understanding is that Relator is not purporting to separately pursue any non-intervened claims, including Relator's claims against Aetna, Elevance Health, and Humana, Inc. ("Humana"). Out of an abundance of caution, Humana joins this Motion to Stay All Proceedings Concerning Relator's *Qui Tam* Claims.

[2] In the event that the date of the scheduling conference gets continued to a later date, the parties request that the stay be extended through any continued date so as to give the parties the chance to discuss any further extension of the stay with the Court at the conference.

The short requested extension will conserve resources, help prevent potentially duplicative efforts and inconsistent rulings, allow the Government to make progress on its investigation, avoid—or, at least, postpone—the need for this Court to decide constitutional and statutory issues regarding Relator's ability—or lack thereof—to proceed on non-intervened claims, and cause no prejudice to the Relator of the Government. The interests of justice thus merit the requested extension of the stay and this motion should be granted.

Relator, through counsel, does not oppose the requested extension of the stay.

## RELEVANT PROCEDURAL BACKGROUND

On November 2, 2021, the Relator filed his original *qui tam* complaint under seal. ECF No. 1. The Relator claimed that several Medicare Advantage Organizations ("MAOs")—including Aetna, Elevance Health, Humana, and WellCare—paid purported "kickbacks" to Third-Party Marketing Organizations ("TPMOs") eHealth, GoHealth, and SelectQuote in the form of payments for marketing services meant to steer Medicare-eligible beneficiaries to the MAOs' Medicare Advantage ("MA") plans. *Id.* ¶¶ 1–15. He further alleged that, "[i]n some instances," one of the objects of the purported kickback scheme—as to some (but not all) MAO Defendants, working with one of the TPMO Defendants—was to unlawfully limit the enrollment of beneficiaries who were disabled and under the age of 65 ("U65" beneficiaries) in those MAOs' MA plans. *See, e.g., id.* ¶¶ 5, 15, 67, 100, 207. The Relator did not bring an independent FCA claim based on this discrimination theory. *Id.* ¶¶ 243–246.  Upon the Relator's filing of this sealed *Qui Tam* Complaint, the

Government opened a multi-year investigation into the Relator's allegations. *See* 31 U.S.C. § 3730(b)(2).

## I.      DOJ's Partial Intervention in Relator's *Qui Tam* Case

More than three years later, in January 2025, DOJ filed a Notice of Election to Intervene in Part, Decline to Intervene in Part, and Not Intervene At This Time in Part ("Notice"). ECF No. 34. The Notice stated, among other things, that the Government had elected to intervene in Relator's claims as to all three TPMO Defendants (eHealth, GoHealth, and SelectQuote) and as to some, but not all, MAO Defendants (Aetna, Humana, and Elevance Health). *Id.* at 1. As to WellCare and another MAO, the Government stated that it "has not completed its investigation and so ... is not intervening at this time, but will continue its investigation." *Id.* The Government reserved the right to "intervene in the portion of the action in which it declines to intervene today ... at a later date." *Id.* at 2. The case remained sealed.

Three months later, on April 29, 2025, the Relator filed—still under seal—an 88-page Amended *Qui Tam* Complaint ("Relator Complaint"). ECF No. 40. The Relator Complaint alleged that (i) MAOs "Aetna, Humana, Wellcare, and [Elevance Health]" paid kickbacks to TPMOs "eHealth, GoHealth, and SelectQuote" to steer beneficiaries to the MAOs' MA plans, and (ii) MAOs Aetna and Humana pressured TPMOs eHealth and SelectQuote to limit the proportion of enrolled U65 beneficiaries. *Id.* at ¶¶ 1–2. In all, the Relator Complaint leveled five FCA counts against eHealth, GoHealth, SelectQuote, WellCare, Aetna, Humana, and Elevance Health for claims for payment that allegedly resulted from AKS violations under 42 U.S.C. § 1320a-7b(g) and/or falsely certified compliance with the AKS or various anti-discrimination laws. *Id.* at ¶¶ 250–278.

Two days later, on May 1, 2025, the Government filed a 217-page Complaint in Partial Intervention ("Government Complaint"), which was unsealed that day. ECF No. 41. Like the

Relator, the Government alleged that (i) "Aetna, [Elevance Health], and Humana" paid "eHealth, GoHealth, and SelectQuote" to "steer beneficiaries" to their plans and (ii) "Aetna and Humana" pressured eHealth, GoHealth, and SelectQuote to "enroll fewer [U65] beneficiaries." *Id.* at 1–2. The Government asserted seven FCA counts against all but one of the same Defendants (all but WellCare), on the same basic theories as the Relator Complaint. *Id.* ¶¶ 799–861.

The Relator purports to be proceeding on five FCA counts, against three TPMOs (eHealth, GoHealth, and SelectQuote) and four MAOs (Aetna, Humana, Elevance Health, and WellCare), premised principally on a marketing kickback theory, and asserting that some—but not all—of the seven Defendants discriminated against U65 beneficiaries. Meanwhile, the Government is proceeding on seven FCA counts, against the same three TPMOs (eHealth, GoHealth, and SelectQuote) and three of the four same MAOs (Aetna, Humana, and Elevance Health; not WellCare), premised principally on a marketing kickback theory, and asserting that most—but, again, not all—of the six Defendants discriminated against U65 beneficiaries. The theories, claims, and allegations advanced by the Relator and Government are not identical, but overlap significantly.

## II.    Motion to Stay Proceedings in Relator's Case & Motions to Dismiss DOJ Complaint

On July 30, 2025, Defendants filed an unopposed motion to stay all proceedings concerning Relator's separate Amended *Qui Tam* Complaint (ECF No. 40) pursuing non-intervened claims until the later of (a) a full resolution of Defendants' motions to dismiss the Government's Complaint in Partial Intervention, or (b) the end of the Government's ongoing investigation. ECF No. 93. The Defendants moved for the stay, which was unopposed by Relator, on grounds similar to those set forth in this motion. On August 15, 2025, the Court granted Defendants' motion, staying all proceedings

concerning Relator's *qui tam* claims until January 21, 2026. The Court ordered that counsel file a status memo regarding the stay by that date. ECF No. 111.

On January 20, 2026, the parties filed the joint status memo and asked for a continuation of the stay consistent with its initial stay request.  ECF No. 142.  On February 13, 2026, the Court granted the extension in part, ordering that the stay would continue through the date of the order on the then-pending motions to dismiss or May 13, 2026, whichever occurred first.  ECF No. 146. On March 25, 2026, the Court issued its opinion and order regarding the motions to dismiss, thereby terminating the stay of proceedings concerning Relator's complaints as of the following day pursuant to the Court's February 13 Order.  ECF No. 147.

### III.    DOJ's Continuing Investigation of the Relator's Claims Involving WellCare

Following the unsealing of the DOJ complaint-in-intervention and Relator's complaints, the undersigned had conversations with DOJ on behalf of WellCare regarding the status of its ongoing investigation into the Relator's claims involving WellCare and the three TPMO defendants.  Specifically, on May 9, 2025, July 28, 2025, and July 30, 2025, the undersigned had conversations with DOJ relating to this matter and, on each call, DOJ either suggested (May 9 call) or confirmed (July 28 and 30 calls) the existence of an ongoing investigation concerning the Relator's claims involving WellCare.  *See* DiSantis Decl. at 1-2.  On the July 28, 2025 call, DOJ also stated that it planned to issue a new Civil Investigative Demand ("CID") to WellCare.  *See id*. at 2.

On March 27, 2026, two days after this Court's order denying the motions to dismiss the DOJ complaint with respect to all claims except the count asserting unjust enrichment, the government served a new CID dated March 26, 2026 on counsel for WellCare.  *See id*. at 2.  This is the first formal process received by WellCare relating to this matter since the January 2022

subpoena it received that kicked off the investigation into Relator's original *qui tam* complaint. *See id*.

### ARGUMENT

The Court should extend the stay concerning all proceedings with respect to the Relator's claims from March 25, 2026 (the expiration of the original stay) through May 26, 2026 (or any later date of the scheduling conference in the event it gets rescheduled). The "'power to stay proceedings is incidental to the power inherent in every court to control the disposition and causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Blue Cross & Blue Shield of Mass., Inc. v. Regeneron Pharm., Inc.*, 633 F. Supp.3d 385, 392 (D. Mass. 2022) (quoting *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936)). In assessing whether a stay is appropriate, courts "weigh the competing interests of the parties and the court's interest in efficient procedures." *Id.* (quotation marks omitted). For several independent reasons, a stay continues to be warranted here.

***First***, an extension of the stay will continue to avoid potential duplication of effort and inconsistent judgments, as well as conserve the parties' and Court's resources.  As noted, the Relator brings claims regarding WellCare and the Government has just recently served a new CID on WellCare as part of an ongoing investigation relating to these claims and has not decided if it will intervene with respect to Relator's claims involving WellCare and the TPMO Defendants. ECF No. 34 at 1. Now that WellCare has received a new CID, absent a stay, it will need to litigate with the Relator concerning claims covered by the ongoing investigation, including a motion(s) to dismiss and potential discovery requests and responses, while simultaneously responding to the new CID and potentially other investigative demands from DOJ on the same topics—all with the possibility that it will have to re-litigate the same issues in the future if DOJ decides to intervene as to the Relator's claims against WellCare. That would be fundamentally unfair, particularly where, as here,

(1) the Government's investigation has been ongoing for nearly four-and-a-half years; and (2) WellCare, which had not received formal process from DOJ relating to these claims since January 2022, received a new CID two days after the expiration of the stay of the proceedings involving the Relator's claims.  Moreover, if the proceedings regarding the Relator's claims were to move forward, the TPMO Defendants would need to litigate with the Relator on claims that—besides overlapping with the Government's—the Government could intervene into, dismiss, settle, or resolve by alternate remedy. *See* 31 U.S.C. §§ 3730(b)(4)(A), 3730(c)(3), 3730(c)(2), 3730(c)(5).

The FCA puts a threshold choice to the Government: (i) intervene and "proceed with the action" or (ii) "decline[]," in which case "the [relator] shall have the right to conduct the action." *Id.* §§ 3730(b)(4); *see id.* § 3730(b)(2).[3]  Here, the Government opted for a third path in its Notice as to the WellCare claims: to "not interven[e] at this time" while it "continues its investigation." *Id.* at 1. But one reason for making the Government decide whether to intervene—and for sealing in the meantime—is to "prevent the defendant from being required to answer the complaint without knowing whether the government or the relator would ultimately pursue the claim." *United States ex rel. Ellard v. Medtronic, Inc.*, 2009 WL 10669335, *1 (W.D. Tex. June 12, 2009); *see United States ex rel. Smith v. Clark/Smoot/Russell*, 796 F.3d 424, 430 (4th Cir. 2015) (sealing also "protect[s] the reputation of a defendant" when the "United States has not yet decided whether to intervene" (quotation marks omitted)). Depending on whether the Government intervenes, there is a substantial risk that litigation of the Relator's WellCare claims will be duplicative and a wasted effort. Courts in this District have found that such avoided duplication alone merits a stay. *See,*

---

[3] *See*, *e.g.*, *United States v. Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 425 (2023) (explaining that "[i]f the Government, during the so-called seal period, elects to intervene, the relator loses control," and that "[o]nly if the Government passes on intervention does the relator 'have the right to conduct the action'" (quoting 31 U.S.C. § 3730(b)(4)(B)).

*e.g.*, *Blue Cross & Blue Shield of Mass.*, 633 F. Supp.3d at 392–93 (stating that where lawsuits overlap, "courts may stay one case to avoid 'duplication of effort and potentially inconsistent judgments.'").

***Second***, an extension of the stay will ensure that this Court need not reach issues uniquely presented by the Relator Complaint unless and until necessary. For instance, an extension of the stay will postpone—or eliminate—the need for this Court to decide if it is unconstitutional for the Relator to litigate non-intervened claims.[4] An extension will also postpone or eliminate the need for the Court to decide multiple, complex statutory questions, such as the extent to which the Relator can proceed after a partial Government intervention.[5] And given the size and overlap of the Relator's and Government's pleadings— which, together, span 305 pages, 1,144 paragraphs, five overlapping claims, and six overlapping Defendants—Defendants will, but for a continuation of the stay, need to seek a more definite statement from the Relator to untangle the parts of the Relator's Amended Complaint that currently remain live versus superseded.[6] *Cf. Vargas v. Lincare, Inc.*, 134 F.4th 1150,

---

[4] *See United States ex rel. Zafirov v. Florida Med. Assocs., LLC*, 751 F. Supp.3d 1293, 1324 (M.D. Fla. Sept. 30, 2024) ("Because Zafirov initiated this FCA action when unconstitutionally appointed, I grant the defendants' motion for judgment on the pleadings and dismiss the case.") (appeal pending in No. 24-13581 (11th Cir.)); *Polansky*, 599 U.S. at 449 (Thomas, J., dissenting) ("There are substantial arguments that the *qui tam* device is inconsistent with Article II..."); *United States ex rel. Montcrief v. Peripheral Vascular Assocs., P.A.*, 133 F.4th 395, 410 (5th Cir. 2025) (Duncan, J., concurring) ("The FCA defies this exclusive vesting of executive power twice over."); *see also* Br. for Defendant-Appellant, *United States ex rel. Penelow v. Janssen Products L.P.*, No. 25-1818, ECF No. 31 at 47–52 (3d Cir. July 14, 2025) (arguing FCA *qui tam* provisions are unconstitutional). The question of whether relators may constitutionally proceed with non-intervened claims has been briefed and argued in the Third and Eleventh Circuits in the *Janssen* and *Zafirov* matters—decisions remain forthcoming.

[5] *Compare, e.g.*, *United States ex rel. Brooks v. Stevens-Henager Coll., Inc.*, 359 F. Supp. 3d 1088, 1120– 21 (D. Utah 2019) (relator's options to proceed after partial intervention restricted), *with, e.g.*, *United States ex rel. White v. Mobile Care EMS & Transp., Inc.*, 2021 WL 6064363, at *11 (S.D. Ohio Dec. 21, 2021) and *United States v. Exagen, Inc.*, 2025 WL 959460, at *6 (D. Mass. Mar. 31, 2025).

[6] This issue is exacerbated by the Relator Complaint packing multiple alleged schemes involving multiple parties into single counts. To illustrate, Count V of the Relator Complaint alleges "Conspiracy" to violate the FCA, but may sweep in alleged crisscrossing conspiracies between Aetna and eHealth, Humana and eHealth, WellCare and eHealth, Elevance Health and eHealth, Aetna and GoHealth, Humana and GoHealth, WellCare and GoHealth, Elevance Health and

1163 (11th Cir. 2025) (Tjoflat, J., concurring) (if a relator forces defendants to "guess at what they should defend against," a Rule 12(e) motion can be merited).

*Third*, an extension of the stay will not prejudice the Relator. To start, much of the Relator Complaint has been superseded by the Government Complaint. Once "the government has intervened, the relator has no separate free-standing FCA cause of action"—there is just "'one claim, the government's.'" *In re Pharm. Indus. Avg. Wholesale Price Litig.*, 2007 WL 4287572, at *4 (D. Mass. Dec. 6, 2007) (quoting *United States ex rel. Barajas v. Northrop Corp.*, 147 F.3d 905, 910 (9th Cir. 1998)); *see*, *e.g.*, *United States v. Pub. Warehousing Co. K.S.C.*, 242 F. Supp.3d 1351, 1357 (N.D. Ga. 2017) ("When the government has intervened, that portion of the relator's complaint effectively ceases to exist..."). Further, the Relator's interest in fees related to the superseded claims under 31 U.S.C. § 3730(d) will be unaffected and any generalized interest the Relator has in the claims advancing will be "protected" by the Government, *UnitedHealthcare Ins. Co. v. Regeneron Pharm., Inc.*, 2021 WL 6137097, at *5 (S.D.N.Y. Dec. 29, 2021). Nor will an extension of the stay harm the Relator as to any non-intervened claims. The extension, and any additional request at the May 26 scheduling conference, will be temporary and tied to DOJ's progress in the ongoing investigation. Additionally, the Relator has not alleged, or otherwise suggested, any urgency here. Much the opposite. The Relator has leveled allegations regarding historical, industry-wide marketing practices. And considering the timing of the filing of the operative amended complaint and the fact that the Relator does not oppose the extension of the stay, there is no reason to expect that the Relator will face prejudice from the comparatively brief stay sought in this motion.

GoHealth, Aetna and SelectQuote, Humana and SelectQuote, WellCare and SelectQuote, and Elevance Health and SelectQuote. ECF No. 40 at ¶¶ 273–278.

## CONCLUSION

For the reasons set forth in this motion, the Court should grant this unopposed motion and extend the stay of all proceedings on the Relator's claims through May 26, 2026 to provide the parties with an opportunity to discuss a further extension of the stay at the upcoming scheduling conference in this matter. If the Court denies this motion, movants respectfully request that the Court extend the deadline for Defendants to respond to the Relator Complaint until 60 days after the date that the denial order is entered on the docket.

| | |
|---|---|
| Dated: April 14, 2026<br><br>/s/ Zachary R. Hafer<br>Zachary R. Hafer (BBO #569389)<br>Adam M. Katz (BBO #706834)<br>Timonthy J. Conklin (BBO #710857)<br>Isabel C. McGrath (BBO #712925)<br>SIMPSON THACHER & BARTLETT LLP<br>855 Boylston Street<br>Boston, MA 02116<br>Telephone: (617) 778-9200<br>zachary.hafer@stblaw.com<br>adam.katz@stblaw.com<br>timothy.conklin@stblaw.com<br>isabel.mcgrath@stblaw.com<br>*Counsel to eHealth, Inc. and eHealthInsurance Services, Inc.* | *Respectfully Submitted,*<br><br>/s/ Ryan M. DiSantis<br>Ryan M. DiSantis (BBO #654513)<br>Allison M. O'Neil (BBO #641330)<br>Colleen E. O'Connor (BBO #710549)<br>TROUTMAN PEPPER LOCKE LLP<br>111 Huntington Avenue<br>Boston, MA  02199<br>Telephone: (617) 239-0382<br>ryan.disantis@troutman.com<br>allison.oneil@troutman.com<br>colleen.oconnor@troutman.com<br>*Counsel to WellCare Health Plans, Inc.* |
| /s/ Laura McLane<br>Laura McLane (BBO #644573)<br>David Gacioch (BBO #660784)<br>Natasha Dobrott (BBO #705287)<br>MCDERMOTT WILL & EMERY<br>200 Clarendon Street<br>Boston, MA 02116<br>Telephone: (617) 535-4410<br>lmclane@mwe.com<br>dgacioch@mwe.com<br>ndobrott@mwe.com<br>*Counsel to GoHealth, Inc.* | /s/ Erik W. Weibust<br>Erik W. Weibust (BBO #663270)<br>Clay Lee (*pro hac vice*)<br>EPSTEIN BECKER & GREEN PC<br>One Financial Center, Suite 1520<br>Boston, MA 02111<br>Telephone: (617) 603-1090<br>eweibust@ebglaw.com<br>clee@ebglaw.com<br>*Counsel to SelectQuote, Inc.* |

| | |
|---|---|
| /s/ Kelly H. Hibbert<br>Kelly H. Hibbert (*pro hac vice*)<br>Michael Shaheen (*pro hac vice*)<br>Troy Barsky (*pro hac vice*)<br>Payal Nanavati (*pro hac vice*)<br>Lauren J.R. Nunez (BBO #687390)<br>CROWELL & MORING LLP<br>1001 Pennsylvania Ave., NW<br>Washington, DC 20004<br>Telephone: (202) 624-2500<br>khibbert@crowell.com<br>mshaheen@crowell.com<br>tbarsky@crowell.com<br>pnanavati@crowell.com<br>lnunez@crowell.com<br>*Counsel to Humana Inc.* | /s/ Richard Westling<br>Richard Westling (*pro hac vice*)<br>PROSKAUER ROSE, LP<br>1001 Pennsylvania Ave., NW, Suite 600 South<br>Washington, DC 20004<br>Telephone: (202) 416-5876<br>rwestling@proskauer.com<br>*Counsel to SelectQuote, Inc.* |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document and attached declaration were served upon all counsel of record via ECF on April 14, 2026.

/s/ Ryan M. DiSantis
Ryan M. DiSantis

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1(a)(2), I hereby certify that I conferred with counsel for the Relator and attempted in good faith to resolve or narrow the issue presented by this motion. Relator's counsel advised that Relator does not oppose the extension of the stay requested herein. I further certify that movants' counsel, as a courtesy, conferred with counsel for the Government and it takes no position on this motion.

/s/ Ryan M. DiSantis

Ryan M. DiSantis