**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ANDREW SHEA, <br><br> *Plaintiff*, <br><br> v. <br><br> eHEALTH, INC., *et al.*, <br><br> *Defendants*. | )<br>)<br>)<br>)<br>)<br>)<br>)    No. 21-cv-11777-DJC<br>)<br>)<br>)<br>)<br>)<br>) |

### THE UNITED STATES' OPPOSITION TO DEFENDANTS'
### MOTION FOR PARTIAL RECONSIDERATION

Defendants' Motion for Partial Reconsideration fails on multiple fronts and should be denied. Dkt. No. 157 ("Mot."). *First*, none of Defendants' arguments justify reconsideration. The Court's forty-two-page opinion, Dkt. No. 147 ("Order"), demonstrates that it understood and did not "misapprehend[]," "avoid[]," or "conflat[e]," Mot. at 4–5, Defendants' arguments about the meaning of an "item" or "service" under the Anti-Kickback Statute ("AKS"). That includes the specific textual argument that Defendants assert here, which Defendants made first in a reply brief. Dkt. No. 128 at 8–9. *Second*, far from any "manifest error of law," *Deaton v. Barrington*, 100 F.4th 348, 360 (1st Cir. 2024) (citation omitted), the Court held correctly, and in agreement with "[o]ther courts facing similar facts," that "[Medicare Advantage] plans can be considered as 'item[s] or service[s]'" under the AKS. Order at 16–17. The Court's statutory interpretation of the AKS was correct and certainly did not create a "nonsensical loop." Mot. at 4.

1

**ARGUMENT**

A.    Legal Standard for Reconsideration

Defendants do not state whether their motion is brought under Rule 59 or Rule 60 of the

Federal Rules of Civil Procedure.  Because there is no final judgment and a Rule 59 motion would

be untimely, Fed. R. Civ. P. 59(e), the Government assumes that Defendants are moving under

Rule 60.  *See* Fed. R. Civ. P. 60(b).

Under Rule 60, "[t]he granting of a motion for reconsideration is an extraordinary remedy

which should be used sparingly."  *Salmon v. Lang*, 57 F.4th 296, 323 (1st Cir. 2022) (quoting

*United States ex rel. Ge v. Takeda Pharm. Co. Ltd.*, 737 F.3d 116, 127 (1st Cir. 2013)).  As such,

the First Circuit has limited reconsideration to those rare situations where "the court has patently

misunderstood a party . . . or has made an error not of reasoning but apprehension."[1]  *Ruiz Rivera*

*v. Pfizer Pharms., LLC*, 521 F.3d 76, 82 (1st Cir. 2008) (considering both Rule 59(e) and Rule

60(b)) (internal quotation marks omitted).  The First Circuit generally requires that a party moving

under Rule 60 "clearly establish a manifest error of law," *Salmon*, 57 F.4th at 323 (quoting *Takeda*

*Pharm.*, 737 F.3d at 127), where a "manifest error" means "[a]n error that is plain and indisputable,

and that amounts to a complete disregard of the controlling law," *Venegas-Hernandez v. Sonolux*

*Recs.*, 370 F.3d 183, 195 (1st Cir. 2004) (quoting BLACK'S LAW DICTIONARY 563 (7th ed. 1999)).

B.    The Court Did Not "Misapprehend[]" Arguments

As their purported justification for this extraordinary remedy, Defendants argue that the

Court "incorrectly merged the principles of remuneration and referrals for items and services" and

"avoided one of Defendants' key arguments" relating to the meaning of "item[s]" or "service[s]"

---

[1] In describing the legal standard, Defendants mistakenly attribute the opinion issued in
*Servants of Paraclete v. Does*, 204 F.3d 1005 (10th Cir. 2000), to the First Circuit.  Mot. at 2.  It
is a Tenth Circuit opinion and therefore not controlling.

under the AKS. Mot. at 4. Neither assertion is correct, and so Defendants cannot meet their high burden for reconsideration.

To start, the textual argument that Defendants now press appeared nowhere in their opening brief in support of their motion to dismiss, instead appearing for the first time in their reply brief. *See* Mot. at 4; Dkt. No. 128 at 8–9. In their opening brief, Defendants made a *separate* argument about regulatory definitions under 42 C.F.R. § 1001.952(t)(2) and 1001.952(*l*)(2): "If 'items and services' encompassed health plans or insurance themselves, that definition would devolve into a nonsensical loop." Dkt. No. 115 at 19. The Government responded to this argument. United States' Consolidated Opp'n to Mot. to Dismiss ("MTD Opp'n"), Dkt. No. 120 at 22. In their reply brief, Defendants pivoted from their initial, regulatory-definition argument. Defendants instead asserted that by the *text* of the AKS, "[b]ecause MA plans are 'federal health care program[s],' they cannot also be an 'item' or 'service'" and that a contrary reading "tortures the text" of the AKS. Dkt. No. 128 at 8–9. It is this latter argument, again raised for the first time in reply, that Defendants now claim the Court "misapprehended." Mot. at 5.

Notwithstanding that "[a]rguments raised for the first time in a reply brief are generally deemed waived," *Murray v. Uber Techs., Inc.*, 486 F. Supp. 3d 468, 473 (D. Mass. 2020), the Court's detailed opinion did not "misapprehend[]" or "avoid[]" Defendants' arguments about the AKS. Mot. at 4–5. Instead, the Court addressed Defendants' arguments about "item" or "service" in a section titled "Interpreting 'Item or Service' Under the AKS." Order at 14–17. In three pages of careful analysis, the Court ultimately "disagree[d] with Defendants' argument that the reach of the AKS is limited to items or services that might be supplied by a healthcare provider to a patient." *Id.* at 16. The Court also noted that "[o]ther courts facing similar facts have determined that steering beneficiaries to particular MAOs in exchange for kickbacks falls within the ambit of the

3

AKS." *Id.* In moving for reconsideration, Defendants do not cite or distinguish any of these cases, all of which the Court expressly considered. *See id.* at 16–17 (citing and quoting *Bond v. Clover Health Invs., Corp.*, 587 F. Supp. 3d 641, 656–57 (M.D. Tenn. 2022); *United States ex rel. Wilkins v. United Health Grp., Inc.*, 659 F.3d 295, 298–99 (3d Cir. 2011); and *United States ex rel. Butler v. Shikara*, 748 F. Supp. 3d 1277, 1290, 1303 (S.D. Fla. 2024)). That the Court did not find Defendants' textual arguments convincing does not suggest any "misapprehen[sion]." Mot. at 5.

The bottom line is that the parties squarely briefed "item" or "service" arguments, including Defendants' belated textual argument on reply. *See* MTD Opp'n at 16–22; Dkt. No. 128 at 7–9. The Defendants then reiterated their arguments in the hearing before the Court, describing this issue as "extensively briefed" and arguing that "the statute covers conduct that when a plan itself reimburses remuneration, that's covered, anything related to the patient care or the medical process. But this is why the government's reading creates this -- we refer to it as a nonsensical loop." Hr'g Tr. 11:3–4, 12:4–9 (Jan. 21, 2026).[2] Far from "avoid[ing]" Defendants' arguments, Mot. at 4, the Court directly engaged by asking about the reach and purpose of the AKS. Hr'g Tr. 11:17–18. The Court's conduct during oral argument and reasoned rejection of Defendants' position in its Order offer no indication that it "misunderstood," conflate[d]," "avoided," or "misapprehended" Defendants' arguments. Mot. at 1, 3–5.

B.    <u>The Court Did Not Err</u>

Even leaving aside that the Court did not misapprehend Defendants' textual arguments, Defendants are substantively wrong as a matter of basic statutory interpretation. As the Court

---

[2] *See also* Hr'g Tr. 11:4–11 ("The government does not cite a case in which a court in which this issue was contested has found a Medicare Advantage plan to be an item or service under the Anti-Kickback Statute."); *id.* 12:10–14 (claiming, incorrectly, that it is the Government's theory that "the MA plan is both the item or service and the healthcare program that reimburses or pays for that service" and arguing that "it just doesn't make sense").

explained, "[i]nterpretation of a word or phrase depends upon reading the whole statutory text, considering the purpose and context of the statute, and consulting any precedents or authorities that inform the analysis." Order at 13 (quoting *Dolan v. United States Postal Serv.*, 546 U.S. 481, 486 (2006)). Here, Defendants' view is unsupported by the text of the AKS and runs counter to the statute's context and purpose. *See* MTD Opp'n at 16–22. After more than a hundred pages of briefing on their motions to dismiss, Defendants fail to cite a single case accepting their textual argument or to clearly explain why the AKS should be set aside here. To the contrary, as the Court described, the "broader purpose of the AKS is to 'strengthen the capability of the [g]overnment to detect, prosecute, and punish fraudulent activities under the [M]edicare and [M]edicaid programs' . . .—a purpose not specific to the fraudulent conduct of medical providers alone." Order at 16 (quoting *United States ex rel. Westmoreland v. Amgen, Inc.*, 812 F. Supp. 2d 39, 53 (D. Mass. 2011), in turn quoting H.R. Rep. No. 95–393, pt. 2, at 44). The Court did not err in its interpretation, let alone any make any "manifest error of law" justifying reconsideration. *Salmon*, 57 F.4th at 323 (quoting *Takeda Pharm.*, 737 F.3d at 127).

Reading the AKS as a whole, Medicare is a "Federal health care program" as the term is defined in the AKS. 42 U.S.C. § 1320a-7b(f); *see* MTD Opp'n at 16. A beneficiary's selected Medicare Advantage plan—say, her "Aetna Medicare Explorer Elite" plan, Dkt. No. 41 ("Compl.") ¶ 794—is not a "Federal health care program" under the statute. 42 U.S.C. § 1320a-7b(f); *see* MTD Opp'n at 16. That is, an individual's particular insurance plan, managed by a private organization that contracts with the Government under a Federal health care program, is not in itself a Federal "program that provides health benefits, whether directly [or] through

insurance." 42 U.S.C. § 1320a-7b(f).  There is no "nonsensical loop" in the Court's reading.[3]  Mot.

at 4.  Take the relevant portions of (b)(2), for example, under the Court's understanding:

> Whoever knowingly and willfully offers or pays any remuneration . . .
>
> (A) to refer an individual to a person for the furnishing or arranging for the furnishing of any item or service [**a Medicare Advantage plan**] for which payment may be made in whole or in part under a Federal health care program [**Medicare**], or
>
> (B)  to purchase, lease, order, or arrange for or recommend purchasing, leasing, or ordering any good, facility, service, or item [**a Medicare Advantage plan**] for which payment may be made in whole or in part under a Federal health care program [**Medicare**] . . . .

42 U.S.C. § 1320a-7b(b)(2).  Contrary to Defendants' litigation position, the Court's interpretation

is consistent with many of the Defendants' *own contracts*, which warn that brokers must comply

with the AKS because the insurers receive federal funds under Medicare Advantage.  *E.g.*, Compl.

¶ 104 ("The Company will pay Producer using federal funds it receives in connection with the

performance of its obligations under CMS's contract with the Company [Humana].  As a result,

Producer shall also comply with all obligations under other federal laws, including the False

Claims Act [and] the Anti-Kickback Statute . . . ."); *cf. United States ex rel. Schutte v. SuperValu*

*Inc.*, 598 U.S. 739, 752 (2023) ("[T]he focus is not . . . on *post hoc* interpretations that might have

rendered their claims accurate.  It is instead on what the defendant knew when presenting the

claim.").

---

[3]  Defendants also assert that "[t]he Government does not dispute Defendants' argument that *enrollments* in an MA Plan do not constitute a 'good,' 'item,' 'service,' or 'facility' as required to implicate the AKS."  Mot. at 3 n.6.  That is wrong.  The Government has not conceded that an enrollment in a Medicare Advantage plan cannot, as a matter of law, constitute a good, item, or service under the AKS.  A plaintiff must plead only "factual allegations, not legal theories." *United States v. Regeneron Pharm., Inc.*, 793 F. Supp. 3d 261, 267 (D. Mass. 2025) (quoting *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014)).

**CONCLUSION**

The Court neither misapprehended Defendants' arguments nor made any error of law in its thorough opinion. The Court should reject Defendants' bid for the "extraordinary remedy" of reconsideration.[4] *Salmon*, 57 F.4th at 323 (citation omitted).

BRETT A. SHUMATE                          LEAH B. FOLEY
Assistant Attorney General               United States Attorney
Civil Division

*/s/ David G. Miller*                     */s/ Charles B. Weinograd*
Jamie Ann Yavelberg                       Abraham R. George
Edward C. Crooke                          Charles B. Weinograd
David G. Miller                           Julien M. Mundele
Anna H. Jugo                              Hillary Harnett
Diana E. Curtis                           Assistant United States Attorneys
Attorneys, Civil Division                 1 Courthouse Way, Suite 9200
U.S. Department of Justice                Boston, MA 02210
175 N Street N.E.                         (617) 748-3100
Washington, D.C. 20002                    Abraham.George@usdoj.gov
(202) 305-2335                            Charles.Weinograd@usdoj.gov
David.G.Miller@usdoj.gov                  Julien.Mundele@usdoj.gov
Anna.H.Jugo@usdoj.gov                     Hillary.Harnett@usdoj.gov
Diana.E.Curtis@usdoj.gov

                                          Attorneys for the United States

Dated: May 8, 2026

---

[4] Defendants' motion lacks a Local Rule 7.1(a)(2) certification. That is because Defendants did not confer with the Government, notwithstanding that the parties met for over an hour in a Rule 26(f) conference *the day before* the Defendants filed their Motion. If Defendants had conferred, the Government could have identified the above-described record citations and potentially conserved party and judicial resources.