**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ANDREW SHEA, <br><br> Plaintiff, <br><br> v. <br><br> eHEALTH, INC., *et al.*, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) No. 21-cv-11777-DJC <br> ) <br> ) <br> ) <br> ) <br> ) |

**THE UNITED STATES' MOTION FOR ENTRY OF**
**PROTECTIVE AND CONFIDENTIALITY ORDER**

The United States respectfully moves for entry of the attached proposed Protective and Confidentiality Order ("Proposed Order").[1]  Despite its best efforts to compromise with Defendants and conserve judicial resources, the Government cannot sign a protective order here that would effectively require litigation in secret.  Defendants' proposals to date would necessitate presumptive sealing of any material that includes or refers to non-privileged business communications (in some instances, emails more than a decade old), absent consent by a producing party.  Under Defendants' proposals, significant portions of the United States' Complaint and even the Court's own order denying Defendants' motion to dismiss ("MTD Order") would have been provisionally sealed.  The presumption of public access to judicial records demands a more thoughtful approach.  *See Siedle v. Putnam Invs., Inc.*, 147 F.3d 7, 9 (1st Cir. 1998).

The Government's proposal strikes a careful balance between appropriate confidentiality, such as for health information and trade secrets, and public access that "fosters the important values of quality, honesty and respect for our legal system." *In re Providence J. Co.,* 293 F.3d 1, 9 (1st

---

[1] The Government expects that Defendants will propose an alternative order for the Court's review.

Cir. 2002) (quoting *Siedle*, 147 F.3d at 9–10).  And the Government's proposal—as well as its initial proposal to Defendants in April 2026—hews closely to at least four protective orders that judges of this district have issued in False Claims Act ("FCA") litigation where the United States intervened to proceed with the action.  *United States ex rel. Kieff v. Wyeth*, No. 1:03-cv-12366-DPW (D. Mass.), Dkt. No. 215 ("Wyeth Protective Order"); *United States ex rel. Nunnelly v. Regeneron Pharms., Inc.*, No. 1:20-cv-11401-PBS (D. Mass.), Dkt. No. 207 ("Regeneron ASP Protective Order"); *United States v. Regeneron Pharms., Inc.,* No. 1:20-cv-11217-FDS (D. Mass.), Dkt. No. 54 ("Regeneron Co-Pay Protective Order"); *United States ex rel. Hitrost v. Study Across the Pond*, No. 1:21-cv-10274-ADB (D. Mass.), Dkt. No. 101 ("SATP Protective Order") (Exs. A–D).

## BACKGROUND

The Government provided a draft protective order to Defendants on April 17, 2026. Defendants proposed revisions more than forty days later, on May 28.  The parties have been meeting and conferring by email and video in the eight weeks since, but now responses are due to initial discovery requests, and despite their extended back-and-forth, the parties have been unable to reach agreement.  In particular, the parties disagree on two key issues: (1) the scope of "Confidentiality" and related presumptive sealing of judicial records, and (2) the retrospective application of a protective order.[2]  In addition to the protections routinely afforded health or

---

[2]  Defendants have also proposed adding novel provisions—such as a paragraph on "Data Breach" disclosure procedures for any "potential unauthorized access, use, disclosure" of information—that to the Government's knowledge have not been previously entered by any session of this Court in FCA litigation or even in any case with the United States as a party.  As the Government informed Defendants, it cannot agree to a remedial provision that might impinge upon the Department of Justice's investigative and prosecutorial functions.  Further, requiring disclosure under vague circumstances, and regardless of how such a disclosure might harm remedial efforts and law enforcement investigations, would not improve information security.

personal information, the Government's proposal protects certain confidential business information and commercially sensitive information. A party seeking to file such information publicly would be required to provide notice to the producing party at least three business days before filing, in order to give the producing party a chance to consent or object to such filing. By contrast, Defendants seek to designate retroactively any document produced as "Confidential" during the Government's investigation as also "Confidential" for the purposes of litigation, regardless of whether the document is public or historical. And Defendants have further proposed that all filings which mention putatively "Confidential" material remain redacted and under seal until at least fourteen days after their filing, absent consent of the producing party.

## ARGUMENT

### I.    The Court Should Not Allow Presumptive Sealing of All Non-Public Business Communications

First and foremost, cases generally cannot be litigated in secret. "The common law presumes a right of public access to judicial records." *Siedle*, 147 F.3d at 9; *see Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978). That common law right extends to "materials on which a court relies in determining the litigants' substantive rights," such as significant filings by litigants. *Anderson v. Cryovac, Inc.*, 805 F.2d 1, 13 (1st Cir. 1986).

In its proposal, the Government has attempted to balance important rights of privacy and confidentiality—such as those relating to personal health information, personal financial information, or trade secrets—with a public right of access to judicial records and hearings. The Government's proposal allows, for example, "Confidential" or "Highly Confidential" treatment and appropriate protections for certain confidential business and operational information, trade secrets, personal health information, and employee personnel files. *See* Proposed Order at 2–3. The Government's approach is consistent with and draws from at least four protective orders that

judges of this district entered in intervened FCA litigation.  *See* Wyeth Protective Order at 1–2 (defining "Confidential Information"); Regeneron ASP Protective Order at 1–3 (same, including "Commercially Sensitive Information"); Regeneron Co-Pay Protective Order at 1–3; SATP Protective Order at 1–2.

That said, and as the prior protective orders in the district recognize, not all business communications contain trade secrets or otherwise merit special secrecy.  *See, e.g.*, Wyeth Protective Order at 2 (limiting, in relevant part, "Confidential" treatment to "[p]roprietary or commercially sensitive information *less than five years old which constitutes a trade secret* under state or federal law" (emphasis added)).  Defendants have most recently proposed that, among other categories, "trade secret *or other* confidential research, development, or commercial information" (emphasis added) be treated as "Confidential" and that filings referring to such "confidential . . . commercial information" must be made under seal in the first instance.  That sweeping "Confidential" category could likely cover nearly every internal communication that any Defendant or any third-party company might produce in this litigation or has produced in the Government's investigation.  When asked directly whether this category would cover all emails, texts, or chat messages quoted in the Court's MTD Order, *e.g.*, MTD Order at 29 (quoting Dkt. No. 41 ¶ 331)), Defendants repeatedly declined to answer, leading to the conclusion that the numerous quotations to Defendants' internal correspondence would have been presumptively sealed under Defendants' framework.  *See* MTD Order at 10, 12, 18, 30, 35, 36, 41.  Defendants' failure to take any steps over the past four months to seal these portions of the MTD Order undermines Defendants' (presumed) position today that the quoted documents are in fact "Confidential."

In conjunction, Defendants' confidentiality and impoundment proposals violate the presumption of public access because they would force any filing referring to, for example, a Defendant's business communications into at least partial sealing for an extended period. *But see* Local Rule 7.2(d) (stating that "[t]he court will not enter blanket orders that counsel for a party may at any time file material with the clerk, marked confidential, with instructions that the clerk withhold the material from public inspection"). Defendants' latest proposal would require that all filings which mention any putatively "Confidential" material remain redacted and under seal until *at least* fourteen days after their filing (plus time for further briefing on sealing and for the Court's decision), absent consent of the producing party. There is no reasonable basis to automatically restrict key case material from public access for weeks at minimum—a delay which would flout the First Circuit's general warning that "even a one to two day delay" to otherwise appropriate public access "impermissibly burdens the First Amendment." *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 507 (1st Cir. 1989).

Further, a party seeking to justify sealing of judicial records must show "specific, severe harm." *F.T.C. v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412 (1st Cir. 1987). Defendants' approach would require no showing by a producing party before initial impoundment. To the extent Defendants merely seek to avoid embarrassment, whether from crude statements by their employees (e.g., "your [i.e., Aetna's] product is dog sh[*]t," Dkt. No. 41 ¶ 381) or from rank discrimination (e.g., "we have to get . . . this % lower" of disabled enrollees, *id.* ¶ 330; setting a meeting "so they can work with us on the issue of minimizing enrolling disabled folks," *id.* ¶ 551), "[a]t least in the absence of extraordinary circumstances, commercial embarrassment is not a 'compelling reason' to seal a trial record." *Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 533 (1st Cir. 1993).

In contrast, the Government's proposal is fair to both sides and consistent with the practice of courts in this district, which have entered near copies of the Government's proposal for filings that include "Confidential" or "Highly Confidential" material. *See* Proposed Order at 10–11. Rather than allowing automatic and potentially lengthy sealing, these protective orders have required a producing party to move for impoundment in advance of another party's filing (after timely notification by the filing party). *See* Wyeth Protective Order at 6 (notification two days before filing); Regeneron ASP Protective Order at 11 (three business days before); Regeneron Co-Pay Protective Order at 8 (three business days before); SATP Protective Order at 8 (five days before). That approach appropriately places the burden on the party seeking impoundment, not the party seeking to litigate openly.

## II.     Retrospective Application of Protective Order

### a.     Confidentiality Should Be Considered on a Document-Specific Basis

To date, Defendants have sought a protective order that applies retrospectively to materials produced between 2022 and 2024 in the Government's investigation, nearly all of which were marked for production as "Confidential" or similar. The Government's proposal should address any valid concern about protections for such material: it would allow Defendants a reasonable time to designate that material for confidentiality protections based on the definitions in an entered protective order. In particular, Section 4 of the Government's Proposed Order states, in part: "Defendants will have 120 days from the date of this Order, and third parties will have 30 days from the receipt of a subpoena or notice by the United States that it intends to produce the third party's documents, to affirmatively designate any such [previously produced] document as Confidential or Highly Confidential by providing a crosswalk for such documents, and a Party may, at any time, challenge the confidentiality designation of any such documents by identifying the specific document(s)." Proposed Order at 4. Further, the Government expressly agrees to

6

handle previously produced documents "under the terms of the form of process under which they were obtained," such as subpoenas or Civil Investigative Demands. *Id.*

The Government does not agree, however, that every document produced by a Defendant in the Government's investigation should automatically remain protected (or "Confidential") throughout the litigation with no further consideration. For example, the Government has seen numerous public documents stamped for production as "Confidential," "Confidential Business Information," or similar within Defendants' productions to the Government during the investigation. These include dozens of copies of the Government's own agency regulations which, despite markings by Defendants' counsel, are emphatically not the "Confidential Business Information" of any Defendant.[3]

Further, the Government's claims relate to conduct from more than four years ago (that is, 2016 through 2021). The Government expects that many historical business communications and documents are not trade secrets: they would not have independent economic value or relate to a Defendant's current or future commercial position and so would not merit automatic special protection. To be clear, that is not a one-sided approach. The Government does not assert that every historical, non-privileged communication by a Government employee should merit special protection or sealing, either. The Government's proposal draws in part from the Wyeth Protective Order, which allowed particular protection for "[p]roprietary or commercially sensitive information less than five years old which constitutes a trade secret under state or federal law,"

---

[3] While the United States has consistently maintained that Defendants' proposal would result in overly broad and unnecessary confidentiality designations, this was another area where the United States initially expressed a willingness to compromise during the meet and confer process if Defendants were willing to agree to other provisions which would ensure that litigation did not occur in secret. Ultimately, the parties could not come to an agreement on those other provisions.

and from the recent Regeneron ASP Protective Order which allowed protections for "Commercially Sensitive Information" relating primarily to certain "current or future" information that "must bear upon a Party's or third party's competitive position."

    b.    <u>Federal Rules of Evidence and Case Law Should Govern Attempts to Claw Back Documents Produced Years Ago</u>

The Proposed Order's provisions regarding the clawback of privileged or protected materials should not apply retrospectively to documents produced years ago during the Government's investigation. *See* Fed R. Evid. 502(b) (requiring that the "holder [of the privilege or protection] promptly took reasonable steps to rectify the error" after "inadvertent" disclosure). Courts have repeatedly held that a lengthy delay in asserting privilege "strongly suggests that the defendants have impliedly waived the privilege." *United States ex rel. Omni Healthcare, Inc. v. MD Spine Sols. LLC*, 736 F. Supp. 3d 75, 84 (D. Mass. 2024); *accord Kaiser v. Kirchick*, No. 21-cv-10590-MBB, 2022 WL 182375, at *8 (D. Mass. Jan. 20, 2022) (finding waiver where the holder "raised the privilege issue more than two years after most of the documents were disclosed in production"); *Santullo v. Woburn*, No. 07-11478-RWZ, 2008 WL 2778819, at *1 (D. Mass. July 14, 2008) (finding waiver after "nearly five months" of delay). After all, "the passage of time before" a party asserts privilege can be "indicative of negligence, not diligence" and so support waiver. *Kirchick*, 2022 WL 182375, at *9 (quoting *In re: New England Compounding Pharm., Inc.*, No. 13-2419-RWZ, 2016 WL 6883215, at *4 (D. Mass. July 28, 2016)). Any further attempted clawbacks of documents produced during the Government's investigation—more than a year after the Government filed its complaint and now years after production of the documents—would suggest negligence at best and gamesmanship at worst.

**CONCLUSION**

The United States moves for entry of the attached Proposed Order, which is consistent with protective orders repeatedly entered in intervened FCA litigation in the district and reflects an appropriate balance between confidentiality and public access.


Respectfully submitted,


BRETT A. SHUMATE                          LEAH B. FOLEY
Assistant Attorney General                United States Attorney
Civil Division

*/s/ David G. Miller*                     */s/ Charles B. Weinograd*
Jamie Ann Yavelberg                       Abraham R. George
Edward C. Crooke                          Charles B. Weinograd
David G. Miller                           Julien M. Mundele
Anna H. Jugo                              Hillary H. Harnett
Diana E. Curtis                           Assistant United States Attorneys
Laurie A. Oberembt                        1 Courthouse Way, Suite 9200
Paden Gallagher                           Boston, MA 02210
Attorneys, Civil Division                 (617) 748-3100
U.S. Department of Justice                Abraham.George@usdoj.gov
175 N Street N.E.                         Charles.Weinograd@usdoj.gov
Washington, D.C. 20002                    Julien.Mundele@usdoj.gov
(202) 305-2335                            Hillary.Harnett@usdoj.gov
David.G.Miller@usdoj.gov
Anna.H.Jugo@usdoj.gov
Diana.E.Curtis@usdoj.gov
Paden.Gallagher@usdoj.gov
Laurie.Oberembt@usdoj.gov


Dated: July 29, 2026                      Attorneys for the United States


9

## <u>LOCAL RULE 7.1 CERTIFICATION</u>

Pursuant to Local Rule 7.1(a)(2), undersigned counsel for the Government certifies that we conferred with Defendants in good faith to resolve or narrow the issues presented by this motion. The parties have been unable to reach agreement on a proposed Protective and Confidentiality Order.


*/s/ David G. Miller*
David G. Miller