**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* ANDREW SHEA,<br><br>Plaintiffs,<br><br>vs.<br><br>eHEALTH, INC., *et al.*,<br>Defendants. | Case No. 21-cv-117770-DJC |

**PROTOCOL RELATING TO THE DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION**

The parties to this Action (collectively, the "Parties") agree to the following concerning the production of documents and electronically stored information ("ESI").

## I. Scope

a. General. The procedures and protocols outlined in this Protocol govern the production of documents and ESI by the Parties.

b. Objective. This Protocol is designed and shall be interpreted such that, subject to any objections by the Party producing documents or ESI ("Producing Party"), responsive, non-privileged[1] documents and ESI are produced by the Producing Party with a minimum of unnecessary costs. To the extent reasonably practicable, the production of documents and ESI shall be conducted to maximize efficiency and minimize discovery costs. The terms of this Protocol shall be construed so as to facilitate the prompt, efficient, and cost-effective exchange of information. Nothing in this Protocol is intended to be an exhaustive list of discovery obligations

[1] As used in this Protocol, "Privilege" or "Privileged" refers to any applicable legal privilege or protection against disclosure of discovery that may be asserted by a Party.

or rights of a Producing Party or the Party requesting the documents or ESI ("Requesting Party"). To the extent additional obligations or rights not addressed in this Protocol arise under the Federal Rules of Civil Procedure ("Federal Rules"), the Local Rules of the United States District Court for the District of Massachusetts, or applicable state and federal statutes, they shall be controlling.

c. Limitations and Non-Waiver. The Parties and their attorneys do not intend by establishing and complying with this Protocol to waive their rights to any protection or privilege. All Parties preserve their privileges and protections, and there is no intent by the Protocol to in any way waive or weaken these privileges and protections. All documents and ESI produced hereunder are fully protected and covered by any protective orders entered by the Court in this Action.

## II. Identification of Responsive Documents and ESI

a. Custodians. Following receipt of an initial Federal Rule 34 request, each Party shall identify a reasonable list of custodians most likely to possess unique, relevant documents and ESI. After the custodian lists are exchanged, the Parties shall meet and confer to address any potential modifications to the lists. The Parties have a continuing obligation to identify any additional custodians likely to possess unique, relevant documents and ESI. Nothing in this paragraph is intended to modify any Party's obligation to search for documents and ESI that are maintained in a shared location or any other repository not linked to an individual custodian.

b. Preservation. As long as a Party complies with its obligation to preserve documents, a Party need not modify or suspend the procedures used by the Party in the ordinary course of business to backup data and systems for disaster recovery and similar purposes related to continuity of operations.

c. Culling. The Parties agree that the Responding Party is best situated to evaluate the procedures, methodologies, and technologies appropriate for producing its own ESI. As such,

a Party may use search terms, other objective delimiters, and/or technology-assisted review technologies as a means of limiting the volume of documents and ESI to be reviewed for responsiveness, provided that any culling methodologies employed to do so are disclosed, if disclosure is requested by the Requesting Party. The Parties may meet and confer regarding methods to cull and limit the volume of documents and ESI.

d. De-duplication. Prior to production, the Parties will de-duplicate e-mails and other electronic files globally or across custodians. The Parties will de-duplicate parent documents (e.g., emails) and their associated child files (e.g., attachments) based on their shared hashes. This is sometimes referred to as "family-level hash duplicate."

e. Threading. To reduce unnecessary volume in the review and production of e-mails, the parties may utilize e-mail threading, which means in instances in which a group of e-mails are captured in an e-mail string, only the most complete email in the string will be produced along with all attachments included in the e-mail string. E-mails containing unique attachments not otherwise contained in the inclusive e-mail shall also be produced along with their parent e-mail.

f. Hyperlinked Files or Modern Attachments. The Parties are not required to collect and associate hyperlinked files with their parent email or electronic communication; however, upon a reasonable and particularized request, a Producing Party will produce or identify such files to the extent it can locate them.

## III. Production Format

a. File Format Production. The Parties agree to make all reasonable efforts to ensure that ESI will be produced in the format set forth below. The Parties will produce ESI as single-page TIFF images with corresponding multi-page text, or in native file format if applicable, and necessary load files. Unless redactions for privilege are necessary, multi-page text shall be

extracted directly from the native file. Native files, along with corresponding metadata, will be preserved. Native files without color will be converted and produced as black and white (*.tif) images of 300 dpi quality or better, with at least CCITT Fax 4 compression. Native files with color will be converted and produced as color (*.jpg) images. The Parties agree that all non-redacted versions of Excel spreadsheets (or similar spreadsheets created using a different software program), PowerPoint presentations (or similar documents created using a different software program), and audio and video files will be produced in native format. The load files will include an image load file as well as a metadata (dat) file with the metadata fields identified below on the document level to the extent available. Hidden content, tracked changes or edits, comments, notes and other similar information viewable within the Native file shall also be imaged so that this information is captured on the produced image file. In certain circumstances, variations to the production format specified in this Protocol may be necessary. In such circumstances, the Parties will meet and confer regarding the production format.

b. ESI Time Processing. Each Party's ESI should be processed using a consistent Time Zone for all data. The Producing Party shall share the Time Zone selected for processing its data with the other Parties upon request.

c. Metadata. No Party has an obligation to create or manually code fields that are not automatically generated by the processing of the ESI, that do not exist as part of the original metadata of the document, or that would be unduly burdensome or costly to obtain. To the extent they are reasonably available and contain non-privileged information, the Parties shall provide the following metadata fields associated with each document produced:

i. For all ESI, the following metadata will be provided as available:

| | | |
|---|---|---|
| Custodian[2] | Document Type | Last Modified DateTime |
| Application | Duplicate Custodian | MD5 Hash |
| Attachment | End Attachment | Native File Path |
| Attachment Count | End Bates | OCR Path |
| Attachment Name | File Extension | Page Count |
| Author | File Name | Parent Bates |
| Beginning Attachment | File Path | Producing Party |
| Beginning Bates | File Size | Production Volume |
| Beginning Bates Attachment | File Type | Record Type |
| Confidentiality[3] | Group Identifier | Redaction |
| Date Time Created | Last Modified By | Text Path |

ii. For email, the same metadata identified above in Section III.c.i. will be provided, as well as the following:

| | | |
|---|---|---|
| Date Time Sent | To | Subject |
| From | BCC | CC |
| Date TimeReceived | CC | Has HiddenContent |
| MessageType | Record Type | |
| Time Zone | | |

iii. For text messages or other short message communications, the Parties agree to meet and confer to discuss appropriate metadata fields.

[2] Custodian may include a non-human data source, such as a file share location or other repository.
[3] Confidentiality refers to the specific designation of the document pursuant to the categories set forth in any protective order entered in the Action.

iv. For hard copy documents, only the following fields will be provided:

| | | |
|---|---|---|
| Beginning Bates | End Bates | Production Volume |
| Custodian | OCR Path | |
| Confidentiality | Producing Party | |

d. Native Files. A placeholder TIFF with the contents "Documents Produced in Native" or similar language and the confidentiality designation (if any) and corresponding Bates number shall be included for each native file produced. Native Files containing content subject to redaction under the terms of this Protocol or any protective order in the Action shall be produced in TIFF format to the extent reasonably practicable. Spreadsheet files that require redaction to protect privileged or otherwise protected information, but that are so large that conversion to an image file is impracticable, may be redacted in native format, using a tool such as Blackout, such that the original metadata is preserved. With respect to spreadsheet files requiring redaction, the Producing Party may use its discretion in determining which production format is appropriate. To the extent any other types of Native Files contain content subject to redaction under the terms of this Protocol or any protective order in the Action, and to the extent those files cannot reasonably be produced with the protected information redacted pursuant to the methods described in this paragraph, the Parties shall meet and confer regarding a reasonable alternative form of production.

d. Structured Data. To the extent possible, all exports of structured data or reports from databases will be produced in .csv file, Excel file, or other delimited format. If an existing report format is not reasonably available or usable, the Parties will meet and confer to attempt to identify a mutually agreeable form of production based on the specific needs and the content and format of data within the structured data source.

e. Paper Documents. All hard copy documents ("Paper Documents") shall be scanned and produced electronically in TIFF format rather than in paper format, and shall be logically unitized. Therefore, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records. Producing Paper Documents in this form does not change their character from Paper Documents into ESI.

f. Document Numbering. Each page of a produced document will have a legible, unique page identifier ("Bates Number") electronically affixed onto the image. The Bates Number for each page of each document will be created so as to identify the Producing Party. In the case of materials redacted or deemed confidential, the Producing Party shall electronically affix the specific level of confidentiality claimed onto each page of the document. The Bates Number and confidentiality designation will be affixed onto the document at locations that do not obliterate, conceal, or interfere with any information from the source document. For documents produced in native format, the Bates Number and confidentiality designation shall be used as the file name and the original file name and file extension shall be preserved in the corresponding load file. For any family of documents for which one or more documents within the family are withheld on the grounds of privilege, a slip sheet shall be inserted in place of the withheld document(s), and the Producing Party shall electronically affix the Bates Number for that document on the slip sheet.

g. Redacted Files. For redacted files, the Parties agree to produce redacted single-page, black and white Group IV TIFF images with metadata contained in a separate file. The metadata fields for a redacted document will comply with the requirements of Section III.c.i., except to the extent (if any) that the metadata fields would reveal the redacted information, in which case the metadata fields may omit the redacted information. Metadata fields shall contain

the OCR or Optical Character Recognition text to avoid disclosure of the redacted text. To the extent documents have been de-duplicated, the CUSTODIAN field or a separate DUPCUSTODIANS field will list all custodians that had possession of the document. With the exception of a natural person's personal financial information protected by applicable law, the Parties agree not to redact for relevance.

h. Production Media. The Producing Party may produce documents via a secure file transfer mechanism or on readily accessible computer or electronic media as the Parties may hereafter agree upon, such as an external hard drive. All Production Media will be encrypted and the Producing Party will provide a decryption key to the Requesting Party in a communication separate from the production itself.

## IV. Assertions of Privilege

a. Privilege Log Substance and Timing. The Parties agree to produce a privilege log for any documents withheld or redacted for a privilege or protection. Any privilege log shall be produced in electronic spreadsheet format in compliance with Federal Rule 26(b)(5) and include the following information: Beginning Bates, End Bates, Beginning Attach, End Attach, Custodian, File Type, Date File Name / Description, Author / From, To, CC, BCC, Log ID Number, Privilege Type, Privilege Description, and the Attorney(s) contributing to the privilege. The Parties will exchange privilege logs on a rolling basis and provide a comprehensive log after document productions are completed. Email threads can be combined into one log entry, provided that the entry details all parties, the full date range, and the total email count.

b. Privilege Log Exclusions. The following categories of responsive documents or ESI need not be listed on a privilege log if such communications and work product post-date: (1) for the United States, October 14, 2021, which is the notice of a prospective complaint by Relator

Andrew Shea to the United States, (2) for Relator, August 9, 2021, which is the initial contact of Relator with any attorney concerning the bringing of a *qui tam* action about the subject matter of the Action, or (3) for each Defendant, the issuance of the first subpoena to Defendant or its related corporate entity in the investigation underlying the Action.

i. Communications with Outside Counsel[4]. Communications concerning this Action between a Party and its outside counsel in this Action, agents retained by outside counsel in this Action to assist in this Action, or any non-testifying experts retained for this Action, or communications reflecting information protected by Fed. R. Civ. P. 26(b)(4) in connection with this Action.

ii. Outside Counsel Work-Product. Materials or work product created or received in connection with this Action by a Party's outside counsel in this Action, agents retained by outside counsel in this Action to assist in this Action, or any non-testifying experts retained for this Action, or materials protected by Fed. R. Civ. P. 26(b)(4) in connection with this Action. This provision extends to the attachments of privileged or work product emails.

iii. Communications with In-House Counsel[5]. Communications concerning this Action between a Party and its in-house counsel. Upon request, the name of the in-house counsel excluded from the privilege log, the in-house counsel's job title, and a brief description of the excluded in-house

[4] "Outside Counsel" for the United States is the Department of Justice.

[5] "In-house counsel" for the United States includes attorneys employed by the United States Department of Health and Human Services or another agency or instrumentality of the United States.

counsel's role in the Action or the related investigation will be provided to Requesting Counsel. Communications with in-house counsel unrelated to this Action are not excluded from logging.

iv. Privileged or protected communications and other work product materials exchanged between the United States and Relator's counsel where the United States and Relator claim a common interest exists.

## V. General Provisions

a. Discoverability and Admissibility. Nothing in this Protocol shall be construed to affect the relevance, discoverability, or admissibility of any document or ESI. All objections, including but not limited to the discoverability or admissibility of any document or ESI are preserved and may be asserted at any time.

i. This Protocol does not imply that discovery produced under these terms is properly discoverable, relevant, or admissible in this Action or in any other litigation or proceeding.

ii. Additionally, nothing in this Protocol shall be deemed to waive or limit any Party's right to object to the production of certain ESI, or to move for an appropriate order on the grounds that the sources are not reasonably accessible.

b. Re-Productions. Documents previously produced by Defendants in response to any civil investigative demand, subpoena, or request issued by the United States in the investigation underlying the Action need not be re-produced by Defendants in this Action. For any such previously produced documents, a privilege log will be provided, and the receiving party may

challenge privilege designations using the procedures governing privilege challenges in this Action.

c. Non-Party Documents. A Party that issues a subpoena upon any non-party ("Issuing Party") shall include a copy of this Protocol and any protective order governing the protection of confidential material agreed to and/or entered in this Action with the subpoena and state that the Parties have requested that non-parties produce documents in accordance with the specifications set forth in this Protocol, to the extent reasonably feasible. The Issuing Party shall promptly produce to all non-issuing Parties a copy of any documents and ESI (including any metadata) obtained from a non-party in accordance with the Federal Rules and subject to all the procedures and protections set forth in any protective order agreed and/or entered in this Action.

d. Modification. In light of the varying and disparate data systems and architectures employed by the Parties, to the extent compliance with this Protocol imposes an undue burden, the Parties shall promptly confer in an effort to resolve the issue. Any practice or procedure set forth in this Protocol may be varied by agreement of the Parties, which will be confirmed in writing, where such variance is deemed appropriate to facilitate the timely and economical exchange of electronic data. Any Party that seeks to deviate from or exceed the limits of this Protocol must obtain leave of the Court to do so unless all Parties consent in writing.

e. Dispute Resolution. The Parties will attempt to resolve disputes regarding compliance with the Protocol prior to filing a motion with the Court or otherwise seeking relief. If the Parties are unable to resolve the dispute after a good faith effort, the Parties may seek Court intervention in accordance with the Court's procedures.

DATED: August 25, 2026

Leah B. Foley
United States Attorney

/s/ Charles B. Weinograd
Abraham R. George
Charles B. Weinograd
Julien M. Mundele
Hillary Harnett
Assistant United States Attorneys
1 Courthouse Way, Suite 9200
Boston, MA 02210
(617) 748-3100
Abraham.George@usdoj.gov
Charles.Weinograd@usdoj.gov
Julien.Mundele@usdoj.gov
Hillary.Harnett@usdoj.gov

*Counsel for the United States*

Brett A. Shumate
Assistant Attorney General
Civil Division

/s/ David G. Miller
Jamie Ann Yavelberg
Edward C. Crooke
David G. Miller
Anna H. Jugo
Diana E. Curtis
Laurie A. Oberembt
Paden Gallagher
Attorneys, Civil Division
U.S. Department of Justice
175 N Street N.E.
Washington, DC 20002
(202) 305-2335
David.G.Miller@usdoj.gov
Anna.H.Jugo@usdoj.gov
Diana.E.Curtis@usdoj.gov
*Counsel for the United States*

/s/ Zachary R. Hafer
Zachary R. Hafer (BBO #569389)
Adam M. Katz (BBO #706834)
Timothy J. Conklin (BBO #710857)
Isabel C. McGrath (BBO #712925)
SIMPSON THACHER & BARTLETT LLP
855 Boylston Street
Boston, MA 02116
Telephone: (617) 778-9200
zachary.hafer@stblaw.com
adam.katz@stblaw.com
timothy.conklin@stblaw.com
isabel.mcgrath@stblaw.com
*Counsel to eHealth, Inc. and eHealthInsurance Services, Inc.*

/s/ Holly M. Conley
Enu Mainigi (*pro hac vice*)
Kenneth Brown (*pro hac vice*)
Holly M. Conley (*pro hac vice*)
Benjamin Hazelwood (*pro hac vice*)
Jeffrey G. Ho (BBO #714047)
WILLIAMS & CONNOLLY LLP
680 Maine Avenue SW
Washington, DC 20024
Telephone: (202) 434-5000
emainigi@wc.com
kbrown@wc.com
hconley@wc.com
bhazelwood@wc.com
jho@wc.com
*Counsel to CVS Health Corporation, Aetna Life Insurance Company, and Aetna Inc.*

/s/ Kelly Hibbert
Kelly H. Hibbert (*pro hac vice*)
Emily Farmer (*pro hac vice*)
BASS, BERRY & SIMS PLC
1201 Pennsylvania Ave., NW
Washington, DC 20004
Telephone: (202) 827-2992
Kelly.Hibbert@bassberry.com
Emily.Farmer@bassberry.com

Matthew M. Curley (*pro hac vice*)
Scott D. Gallisdorfer (*pro hac vice*)
Rebecca L. Guthrie (*pro hac vice*)
BASS, BERRY & SIMS PLC
21 Platform Way South, Suite 3500
Nashville, TN 37203
Telephone: (615) 742-6200
MCurley@bassberry.com
Scott.Gallisdorfer@bassberry.com
Rebecca.Guthrie@bassberry.com
*Counsel to Humana Inc.*

/s/ Lisa M. Noller
Lisa M. Noller (*pro hac vice*)
Patrick J. McMahon (*pro hac vice*)
FOLEY & LARDNER LLP
321 North Clark Street, Suite 3000
Chicago, IL 60654
Telephone: (312) 832-4500
lnoller@foley.com
pmcmahon@foley.com

Jamie Steven (BBO #705904)
FOLEY & LARDNER LLP
111 Huntington Avenue, Suite 2500
Boston, Massachusetts 02199
Telephone: (617) 342-4000
jsteven@foley.com
*Counsel to Elevance Health, Inc.*

/s/ Clay Lee
Erik W. Weibust (BBO #663270)
Clay Lee (*pro hac vice*)
EPSTEIN BECKER & GREEN PC
One Financial Center, Suite 1520
Boston, MA 02111
Telephone: (617) 603-1090
eweibust@ebglaw.com
ctlee@ebglaw.com
*Counsel to SelectQuote, Inc.*

Richard Westling (*pro hac vice*)
PROSKAUER ROSE, LLP
1001 Pennsylvania Ave., NW,
Suite 600 South
Washington, DC 20004
Telephone: (202) 416-5876
rwestling@proskauer.com
*Counsel to SelectQuote, Inc*

/s/ Jonathan L. Kotlier
Jonathan L. Kotlier (BBO #545491)
NUTTER, MCLENNEN & FISH, LLP
Seaport West, 155 Seaport Blvd.
Boston, MA 02110
Telephone: (617) 439-2000
jkotlier@nutter.com
*Counsel to Humana, Inc.*

/s/ Laura McLane
Laura McLane (BBO #644573)
David Gacioch (BBO #660784)
Mara Theophila (BBO #704763)
Natasha Dobrott (BBO #705287)
MCDERMOTT WILL & SCHULTE LLP
200 Clarendon Street, 58th Floor
Boston, MA 02116
Telephone: (617) 535-4410
lmclane@mwe.com
dgacioch@mwe.com
mtheophila@mwe.com
ndobrott@mwe.com
*Counsel to GoHealth, Inc.*